Frederick W. V. Schadt, J.
On September 6, 1958 at about 11:30 p.m. the defendant was arrested in the Village of Monticello, Sullivan County, charged with the offense of public intoxication. He was committed to the village lockup where he spent the night. The following morning he was dicharged. At no time from his arrest until his discharge was he brought before a Magistrate. The arresting officers testified that his condition at the time of his arrest made it impossible for him to be arraigned. In any event, the morning following his arrest he was released. The charge was dismissed and defendant discharged.
After the defendant had been picked up on the night of September 6, 1958 he was taken to the village lockup where the police officers properly, and in accordance with good police practice, relieved the defendant of the contents of his pockets, which consisted, among other things, of something in excess of $900 in cash and certain pieces of paper included among Avhich were so-called “betting slips”. These “betting slips” were described on the hearing of the motion in this matter as simply memoranda upon which the name of the horse, the race, the money bet and so forth were written for information purposes. There is no prescribed form except such as an mdividual finds best suited for his own purposes.
The arresting officers stated that these “betting slips ” had no significance to them but thinking that they might be of some importance, contacted the security officer of the Monticello Raceway.
*484 The defendant was one of the drivers at that track. The security officer at the raceway accompanied by a local policeman took these “ betting slips ” and certain other papers which had been taken from defendant’s pockets to the administration building at the track and there photographed or photostated them. They were then given back to the arresting officers who placed them with the defendant’s other belongings and returned them to him on the morning of his release. A coherent recitation of what happened is revealed by the testimony of the security officer in response to questions asked, as follows:
“A. Shortly after midnight Jack Buchal of the Monticello Police Department came out to the Monticello Raceway and at that time he advised me that Charles Wingate, one of our drivers, had been arrested on a charge of public intoxication, was presently confined in the Monticello village lock-up and at that time he told me that when the personal effects were removed from the prisoner there were various slips and papers which might be betting slips and papers, and he asked me if I was interested and I told him that I would proceed to the village lock-up with him as soon as the Raceway money had been deposited. This I did.
“ A. Well, I could only tell you in substance. That conversation would necessarily have been with Sgt. Anton and Patrolman Buchal and I advised them that I was very interested in Charles Wingate in view of the fact that on September 5th we had initiated an investigation which involved Charles Wingate. At that time Sgt. Anton produced the wallet of Charles Wingate and he took out slips, various slips, of paper which apparently were betting slips, records of bets.
£tA. Well, I explained to the Sgt. and Patrolman Buchal that an investigation was under way and I told them that I would like to make photostats of these various betting slips and suggested that the only place that I knew at that particular hour of the night where we could have photostats made would be at the executive office of the race track. In view of this Patrolman Buchal accompanied — as a matter of fact, I believe we did go out in the police car to the race track where I did make photostatic copies of these betting slips which had been removed from Charles Wingate’s wallet.”
The defendant did not know of this procedure nor was he ever asked if copies could be made of the papers taken from his pocket and he never gave his consent and no warrant was ever issued. The first the defendant knew of what had taken place was at a hearing before the State Harness Racing Commission when he was confronted with copies of these ££ betting slips ”. *485 As a result of this hearing his license to drive in New York State was revoked and subsequently and in December, 1958 he was indicted by the Grand Jury of Sullivan County for the crime of bribery in professional games in horse racing in violation of subdivision 2 of section 382 of the Penal Law of the State of New York. Some of the evidence before the Grand Jury was the photostated copies of the “ betting slips ”. The defendant pleaded not guilty and is now on bail awaiting trial.
The defendant has moved for an order directing: “ The suppression of all evidence, statements and admissions made and obtained from the defendant in violation of his constitutional rights and particularly the Fourth Amendment of the United States Constitution. ’ ’
There is presently nothing in the Code of Criminal Procedure dealing with motions of this kind. This court was of the opinion that to wait until trial when the same motion would be made would be ridiculous and would result in a trial within a trial. An order was therefore made directing testimony be taken before the court on March 9,1962.
Defendant’s counsel subpoenaed the police officers and the testimony taken elicited the information hereinbefore set forth.
This court is of the opinion that the evidence was illegally obtained and that pursuant to the decision of the United States Supreme Court in Mapp v. Ohio (367 U. S. 643) the evidence so obtained is not admissible upon the trial of the defendant. The so-called “ betting slips” were not contraband and they were not illegal per se. Nor did such “ betting slips ” constitute any part of the evidence necessary to sustain the arrest of the defendant for the offense for which he was charged. Not only does the rule as to illegal search and seizure, as enunciated in Mapp v. Ohio apply to evidence illegally seized, but also to copies or photographs of such evidence. The United States Supreme Court said in Silverthorne Lbr. Co. v. United States (251 U. S. 385, 391-392):
“ The proposition could not be presented more nakedly. It is that although of course its seizure was an outrage which the Government now regrets, it may study the papers before it returns them, copy them, and then it may use the knowledge that it has gained to call upon the owners in a more regular form to produce them; that the protection of the Constitution covers the physical possession but not any advantages that the Government can gain over the object of its pursuit by doing the forbidden act. * * *
“ In our opinion such is not the law. It reduces the Fourth Amendment to a form of words * * *. The essence of a *486 provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court hut that it shall not be used at all.”
Not only is the evidence illegally obtained to be suppressed and excluded but also any il links and leads ” obtained through such evidence. (See People v. Laino, 10 N Y 2d 161). Nothing can make the situation clearer than the opinion of the learned Judge in the case just cited.
The defendant’s personal effects were taken from him as routine procedure not necessary to his arrest nor were they per so in violation of any law and were photographed and used in subsequent proceedings. It is unconceivable that such procedure can he approved under our law. By no stretch of the imagination can it be said that this evidence was legally obtained. It is the opinion of this court that the evidence obtained in the manner stated should be suppressed.
Let it be made clear, however, that this opinion is in no way to he considered a reflection upon the integrity or ability of the arresting officers who acted in good faith and in accord with usual police practice. The arrest was made in 1958 and the opinion of the United States Supreme Court rendered in 1960.
The attorney for the defendant may submit an order in accordance with his motion “ directing the suppression of all evidence, statements and admissions made and obtained from the defendant in violation of his constitutional rights and particularly the Fourth Amendment of the Constitution ”. The District Attorney is further directed to return all copies or photostatic copies of any and all papers seized in this proceeding and is hereby restrained from using any and all evidence obtained by, through or under such documents in the trial of this defendant.