Joseph A. Saraeite, J.
The defendant was indicted for feloniously possessing a narcotic drug in. violation of section 1751 of the Penal Law. He now moves to suppress evidence allegedly obtained as the result of an unlawful search and seizure. No hearing was held, the parties having agreed that the issue be decided upon the basis of the undisputed facts elicited upon the preliminary examination. Accordingly, the court finds the facts to be as stated herein.
At about 12:45 a.m. on November 21, 1962, a New York City police officer observed the defendant in a car parked on a street near the rear exit of a theatre. After about 15 minutes, the defendant began to drive the car down the street, and the officer signaled him to stop. The defendant stopped, and the officer asked him to exhibit his operator’s license and certificate of registration. He was unable to do so. The officer asked for evidence of identity, which the defendant was also unable to produce. The defendant then stated that his operator’s license, certificate of registration and evidence of identity were in the theatre which he had just left. The officer agreed to accompany him back to the theatre. While they were walking there, the officer questioned the defendant concerning the ownership of the car. The defendant’s answers were conflicting, and the officer decided that he could not believe what the defendant was saying. He then placed the defendant under arrest for driving an unregistered motor vehicle without an operator’s license in violation of Vehicle and Traffic Law (§ 401, subd. 1, par. a and § 501, subd. 4, par. a).* The officer then searched the defendant, found a substance later analyzed as Cannabis, and arrested him for violation of section 1751 of the Penal Law. The traffic charges were later dismissed when the defendant produced in court his registration certificate and operator’s license.
*1020 The issues presented here are: (1) whether a police officer may lawfully stop a moving vehicle for the sole purpose of determining whether its driver has a certificate of registration and an operator’s license; (2) whether a person arrested for driving without these documents may lawfully be searched incident to that arrest; and, if so, (3) whether such an arrest, and thus the search incident thereto, becomes illegal by virtue of the fact that the charges are subsequently dismissed.
The defendant argues first that the officer had no authority to order him to stop his automobile and produce his certificate of registration and operator’s license, and that therefore the conduct of the officer constitutes an illegal arrest, causing the subsequent search to be illegal. However, subdivision 4 of section 401 provides in part that: “Every person operating a motor vehicle * * * shall upon demand of any * * * peace officer * * * produce for inspection the certificate of registration * * * for such vehicle and shall furnish to such * # * officer * * * all information required concerning his license to operate ”. This provision imposes no limitation upon an officer’s right to demand production of the documents in question. The defendant’s argument has recently been rejected by the Court of Appeals (People v. Battle, 12 N Y 2d 866 [1962]) and is similarly rejected here.
The defendant’s second argument is that although a search of the person is lawful when conducted incident to a lawful arrest (People v. Loria, 10 N Y 2d 368 [1961]; People v. O’Neill, 11 N Y 2d 148 [1962]), a police officer may not search a person whom he has arrested for a mere traffic violation. He argues that the right to search incident to a lawful arrest ‘1 is confined solely to fruits, instrumentalities or contraband connected with the crime ” for which the person searched has been arrested, and that there are no fruits, instrumentalities or contraband connected with the crime of driving without an operator’s license and certificate of registration. In support of this argument he cites: People v. Blodgett (46 Cal. 2d 114); People v. Gonzales (356 Mich. 247); People v. Zeigler (358 Mich. 355) and People v. Watkins (19 Ill. 2d 11).
However, it is clear that one of the purposes of a search incident to a lawful arrest is “to remove weapons or other instrumentalities which might be used to resist the officers or for escape or similar purposes” (Taglavore v. United States, 291 F. 2d 262, 265 [9th Cir., 1961]). That this is a legitimate purpose of such a search has also been recognized by the United States Supreme Court in Agnello v. United States (269 U. S. 20, 30 [1925]). It is true, of course, that there is little likeli *1021 hood that a person arrested for a traffic violation will attempt to use a weapon in order to effect an escape. But there is a risk, and a police officer who has made a lawful arrest should not be forced to run it.
The cases cited by the defendant are not inconsistent with the position taken here. In the Blodgett case, the court stated that when a person is arrested for a traffic violation, the police may not make an incidental search of his automobile-, search of the person was not in issue. In the Gonzales case, the court found that the police intended only to issue a summons, not to arrest for purposes of incarceration. The court specifically stated that where a traffic arrest is made with intent to incarcerate, justification for an incidental search may exist. The Zeigler case is similar, for there, too, the defendant was given a summons; there was no holding that an incidental search may not be made of a person actually taken into custody for a traffic violation. And in the Watkins case, the court stated that arrests for certain traffic violations would justify an incidental search, giving examples not too dissimilar from the facts of the present case. The rule that an officer may conduct a search incident to a lawful arrest for a traffic violation applies whenever, as here, the traffic arrest is a bona fide arrest. A different rule may apply when the traffic arrest is a mere pretext used by the police in an attempt to justify a search for the fruits or instrumentalities of some unrelated crime (see Taglavore v. United States, supra).
The final issue in this case is whether, under the rule stated in People v. Dreares (15 A D 2d 204 [1st Dept., 1961], affd. 11 N Y 2d 906 [1962]), the dismissal of the traffic charges rendered unlawful the traffic arrest, and thus the search conducted incident thereto. In the Dreares case, it was held that an acquittal on a charge of loitering established that the crime had not been committed, and that the arrest for that crime, a misdemeanor, was thus illegal under section 177 of the Code of Criminal Procedure thereby giving the person arrested the right to resist the arrest. The rule of the Dreares case does not apply here, for the following reasons.
The crimes, for which the defendant was arrested, were driving an unregistered motor vehicle (§ 401, subd. 1, par. a) and driving while being an unlicensed operator (§ 501, subd. 4, par. a). These crimes are made misdemeanors by subdivision 18 of section 401 and subdivision 9 of section 501, respectively. These charges were dismissed when the defendant produced in court his certificate of registration and his operator’s license. It is undisputed, however, that the defendant failed to exhibit these *1022 documents upon the request of the officer who had stopped his car. His failure to do so was a violation of subdivision 4 of section 401, and thus was a traffic infraction under section 155. The traffic infractions (failure to exhibit operator’s license and certificate of registration) are separate and distinct from the. misdemeanors (driving without being a licensed operator and driving an unregistered motor vehicle). Section 155 also provides that “ [f] or purposes of arrest without a warrant * * * a traffic infraction shall be deemed a crime.” Consequently, for purposes of arrest under section 177 of the Code of Criminal Procedure, the defendant, in failing to exhibit the documents in question, was actually committing a crime in the officer’s presence. The mere fact that the officer arrested him for the misdemeanors rather than for the infractions does not constitute a fatal error. (See People v. Jones, 232 N. Y. S. 2d 18 [Ct. of Gen. Sess., 1962].) Thus, the dismissal of the misdemeanor charges had no effect upon the legality of the arrest, which was justifiable on other grounds.
The same result would be achieved even in the absence of section 155. The rule of the Breares case applies logically to the normal misdemeanor arrest. The situation presented here is not the normal misdemeanor arrest situation, and the Breares rule may not logically be applied to it.
When the defendant failed to exhibit his certificate of registration and his operator’s license, there arose, by virtue of subdivision 4 of section 401 and paragraph e of subdivision 1 of section 501 a statutory presumption that he was guilty of the misdemeanors of driving an unregistered vehicle and being an unlicensed operator. There was not involved here, as there was in the Breares case, a factual situation capable of being misinterpreted and upon which a police officer might act precipitously. Here, on the basis of undisputed facts incapable of misinterpretation, the officer was faced with a statutory presumption of guilt. He had an obligation to enforce the traffic laws, and thus he could not ignore that statutory presumption. Nor could he effectively enforce the law by issuing a summons to a person who could not identify himself. Such a procedure might have amounted to an exercise in futility. Under the circumstances, he was obliged to arrest the defendant. Even in the absence of section 155, the arrest would have been lawful as a necessary exception to section 177 of the Code of Criminal Procedure, for the law may not logically, under one provision, impose upon an officer the absolute duty to perform an act made illegal under another provision. To apply the Breares rule to the situation presented here would mean that a motorist who *1023 actually had in his possession his operator’s license and certificate of registration, but who refused, in violation of law, to exhibit these documents to a police officer lawfully requesting to see them, could resist with force the arrest which his own illegal conduct had made necessary. Nothing in the Drear es case requires such a holding.
The position taken here is supported by the case of People v. Stuyvesant (197 App. Div. 641 [1st Dept., 1921]). There, the defendant was arrested when he was unable to exhibit a license for a loaded pistol he carried concealed upon his person. At that time, the crime for which he was arrested was a misdemeanor under subdivision 5 of section 1897 of the Penal Law. A statutory presumption of violation of that section was created by section 1898 of the Penal Law. The right of a peace officer to arrest without a warrant for a misdemeanor was the same as it is today. Upon the trial, the defendant produced his written license, which was in force at the time of his arrest, but he was nonetheless convicted. The conviction was reversed on the ground that defendant had committed no crime in failing to have his license on his person. The court added, however, that: “ The officer was justified in arresting the defendant in the absence of proof that a license had been issued to him ” (197 App. Div. 641, 642). The similarity between that case and the case at bar is striking.
The motion to suppress is denied.

Hereafter, all sections cited refer to the Vehicle and Traffic Law except where otherwise stated.