Oscab Murov, J.
This is an application for an order to suppress evidence. The objects of the motion are two manila envelopes alleged to contain cannabis sativa, commonly known as marijuana. A prior application made by the defendant herein was denied by this court because the same was not based upon an affidavit of one having knowledge of the facts. (See People v. Vasques, 50 Misc 2d 12.)
A hearing in this matter was held on September 28, 1966, at which time the following facts were developed: A police officer was summoned to the scene of an alleged hit-and-run accident at approximately 1:30 a.m., on January 10, 1966, on Straight Path just south of Patton Avenue in the Hamlet of Wyandanch. At the scene the officer found an overturned vehicle and an injured driver. The officer learned that another vehicle had been involved in the accident and had left the scene. The fleeing vehicle was described as being a 1957 or 1958 dark-colored Oldsmobile sedan. Subsequently, at about 2 -.45 a.m., four blocks from the accident, the same officer observed a 1957 Oldsmobile, dark in color, ‘ ‘ standing ’ ’ on the travelled portion of the roadway, motor running and a piece of chrome hanging down from the front touching the ground. The defendant was seated behind the Avheel. When requested to produce his driver’s license and vehicle registration the defendant failed to produce an operator’s license, but did produce a certificate of registration for the plates attached to the vehicle in which he was sitting. The registration certificate did not describe that vehicle. The defendant Avas issued summonses for operating without a license, having an unregistered vehicle in his possession, switched plates, no insurance and no inspection certificate — violations, respectiATely, of sections 501 (subd. 4, par. a), 401 (1), 402 (subd. 4), 318 and 306 (subd. [b]) of the Vehicle and Traffic Law.
The defendant was arrested and taken to a police precinct. As he was being readied for incarceration pending his release on bail or arraignment before a Judge he was asked to empty the contents of his pockets. He Avas then advised that he would be given a receipt for each item and as the items were being recorded for receipt purposes the arresting officer picked up a handkerchief belonging to the defendant and observed two manila envelopes fall to the floor. The officer picked up the two envelopes which were unsealed, looked into them and observed a “tobacco-like substance which appeared to be marijuana.” The defendant was subsequently charged with possession of marijuana, a violation of section 1751-a of the Penal Law.
All of the motor vehicle charges except one were dismissed. It *1060 is fundamental, however, that the dismissal of the subsequent charges does not affect the legality of the defendant’s arrest provided the arrest was lawful in the first instance. (People v. Isaac, 38 Misc 2d 1018.)
The threshold question is whether the arrest was lawful.
All of the vehicle and traffic charges emanated from the defendant’s alleged operation of a motor vehicle. It, therefore, must be determined whether sitting in a driver’s seat with the motor running, on the travelled portion of a highway, is operating a motor vehicle.
The Vehicle and Traffic Law defines (§ 127) an operator as “ any person, other than a chauffeur, who operates or drives a motor vehicle or a motorcycle upon any public highway.” In Witherstine v. Employers’ Liab. Assur. Corp. (235 N. Y. 168, 172), the court discussed the meaning of the word “ operate ” under the former Highway Law (§ 281) which contained provisions similar to section 127 of the Vehicle and Traffic Law. The word “operate” signifies “a personal act in working the mechanism of the car.” As quoted in Hand v. Fraser (139 Misc. 446, 448) “ the word ‘ operated ’ is not * * * limited to a state of motion produced by the mechanism of the car, but includes at least ordinary stops upon the highway, and such stops are to be regarded as fairly incidental to its operation.” In People v. Domagala (123 Misc. 757) the court held that starting a motor for the purpose of putting an automobile into motion constituted “ operation.” Section 401 of the Vehicle and Traffic Law provides that “ no motor vehicle shall be operated or driven upon the public highways” without first being registered, and section 359 of the Vehicle and Traffic Law defines “ operator ” as “ every person other than a chauffeur who is in actual physical control of a motor vehicle.” (Emphasis added.)
The defendant by his own choice had placed himself behind the wheel and either started the motor or allowed it to run, so that it may be said that he then and there had actual physical control of the vehicle. (See Ann. 47 A. L. E. 583.) This court holds that the defendant was operating a motor vehicle within the intent and meaning of the Vehicle and Traffic Law, and therefore, there was a lawful arrest.
In the instant matter we have two “ searches ”, the first being the divestiture of defendant’s belongings in the presence of the police officer, and the second the opening of the manila envelope by the arresting officer to examine its contents. The divestiture of the personal belongings of the defendant is not in the true *1061 sense a search, but in the final analysis it is a disclosure of the personal possessions of a defendant in the presence of an officer which is tantamount to a search.
In determining whether or not the divestiture is sanctioned by the law, we find that subdivision 7-a of section 46 of the Correction Law empowers the Commission of Correction to “ promulgate rules and regulations establishing minimum standards for the care, custody, correction treatment * * * for all persons confined in local correctional institutions.” Said subdivision provides that local correctional institutions shall also mean police station jails. An examination of regulations as issued by the State Commission of Correction pursuant to the afore-mentioned section indicates the following: “Searching: On arrival at the place of detention the prisoner should be thoroughly searched for any contraband or articles with which he might injure himself or others, or mar the cells. Property rights of prisoners shoud be protected by an accurate listing of all money and property taken at the time of admission and by obtaining receipts when property is returned to the prisoner.” (Eegulations adopted June 3,1929, last revised 1965.)
The Fourth Amendment of the Constitution of the United States protects not against all searches and .seizures but “ against unreasonable searches and seizures.” In Ker v. California (374 U. S. 23, 34) the court held: “ The States are not thereby precluded from developing workable rules governing arrests, searches and seizures to meet the practical demands of effective criminal investigation and law enforcement in the States, provided that those rules do not violate the constitutional proscription of unreasonable searches and seizures and the concomitant command that evidence so seized is inadmissible against one who has standing to complain. ’ ’
This court holds that the provisions of section 46 (subd. 7-a) and the promulgated rules of the State Commission of Correction, are reasonable and necessary for the protection of the defendant as well as other persons confined in the jail. The requirement of divestiture set forth in section 46 (subd. 7-a) does not produce unreasonable searches and seizures.
A divestiture should not be sought by police an an excuse to determine what a defendant, who is arrested for a crime, has in his possession. If we are to give meaning and purpose to the Fourth Amendment, the divestiture should be strictly maintained and adhered to for its avowed purpose.
The Constitution commands that all searches be made with a search warrant. Nevertheless, the Supreme Court has held *1062 that under exigent circumstances, a search incidental to an arrest may be made. But because the incidental search is exceptional and because it is permitted only under exigent circumstances, the Supreme Court has placed severe limits upon the incidental search with respect to purpose and product. Only if the prime purpose is to arrest, does the Constitution, under exigent circumstances, sanction the incidental search. The incidental search is also limited as to product. The police officer may search for and seize only the “fruits” óf or “ instrumentalities ” used in the commission of the crime for which the arrest is made. That is all! (Sobel, Recurrent Problems in Search and Seizure.)
It cannot be claimed that the marijuana was the “ fruits or instrumentalities ” of the motor vehicle charges for which the defendant was arrested.
If in the course of a reasonable incidental search the police officer finds contraband, such as narcotics, he may seize these as the fruits of the ‘ ‘ possession ’ ’ crime then being committed in his presence, notwithstanding that the narcotics are not the fruits or instrumentalities of the crime for which the defendant was arrested and the incidental search conducted. The arrest then made is for the possession crime. If the police observe a person drop a package resembling contraband, such observation and other information may furnish probable cause to search and arrest for the possession crime. (Hester v. United States, 265 U. S. 57; Lee v. United States, 221 F. 2d 29; People v. Battle, 12 N Y 2d 866; People v. Pittman, 14 N Y 2d 885.)
What the officer observed in open view while the divestiture was being made was not contraband. If there were other information and facts which would constitute probable cause, he could lawfully open and search the packets and arrest for the possession crime. At the time the patrolman saw the two packets he did not know what the envelopes contained and there was nothing up until that moment that would provide him with probable cause to search its contents since the envelope could have contained many other things besides marijuana. (People v. Scalegnio, 14 N Y 2d 744.) There was nothing illegal about the defendant having in his possession manila envelopes. Here, without probable cause, the search disclosed marijuana; the marijuana then served as a basis for the new charge, which in turn was claimed to justify the search. It is fundamental that a search which is unreasonable for want of probable cause cannot be made reasonable by what the search uncovers. (United States v. Di Re, 332 U. S. 581; Byars v. United States, 273 U. S. *1063 28.) The Court of Appeals in People v. Rivera (14 N Y 2d 441, 447) states: “ The question is not what was ultimately found, but whether there was a right to find anything. ’ ’
The People have cited People v. Vitale (N. Y. L. J., Aug. 2, 1966, p. 9, col. 6 [Nassau County Ct.]). The facts revealed that the officer observed two cellophane envelopes which the patrolman recognized as containing marijuana. There was further testimony as to the arresting officer’s experience, training, association with members of the Narcotics Squad and knowledge as to the packaging of marijuana, which the court apparently concluded was sufficient probable cause.
In the case at bar we do not have a recognition by the police officer that the manila envelopes contained marijuana nor do we have any other facts and circumstances which constitute probable cause.
This court holds that the action of the officer in opening the envelopes was an illegal search, a violation of the constitutional rights of the defendant and, accordingly, the motion to suppress is hereby granted.