Isaac P. Whitcomb *v.* Daniel C. Gilman.

*Book Account.　Contract.　Illegal Contract.　Sunday.*

As a matter of law it is not always unnecessary to work on Sunday to prevent a great waste of sap, in making maple sugar.

If a party who has contracted to labor for another for a certain time, at a fixed price per month, with a proviso, that if either party become dissatisfied before the expiration of the time agreed upon, he may terminate the contract, does become dissatisfied, and terminates the contract he may recover for the time he has worked at the stipulated price per month.

Book Account. The auditor reported that the first item of the plaintiff's account was for labor from December 26th, 1859, to July 11th, 1860, at the rate of fifteen dollars per month; that shortly before the 26th of December, 1859, the plaintiff contracted with the defendant to work for the latter, at general farm work, for one year from that date, at fifteen dollars per month, with a stipulation that either party should have the right to terminate such contract at any time during the year when he should become dissatisfied and desire to terminate it; that the

plaintiff worked for the defendant under this contract until July 11th, 1860, when he became dissatisfied, mainly with the distance he had to go on foot to his daily work, and on that account left the employment of the defendant at that time.

The defendant claimed that the plaintiff, if entitled to recover any thing for such labor, was entitled to recover only what his services were reasonably worth, and gave evidence tending to show that during the portion of the year the plaintiff did work, his labor was not worth fifteen dollars per month.

The second item was for labor by the plaintiff for the defendant, on two Sundays, under the following circumstances: In the spring of 1860, the defendant carried on a sugar place. He told the plaintiff he would pay him extra for work he should do in such sugar place on Sundays. The plaintiff worked in the sugar place on two Sundays, when it was necessary in order to save a great waste of sap, and the auditor found that the plaintiff's charge for such labor was reasonable.

Upon these facts the county court, at the June Term, 1861, PECK, J., presiding, rendered judgment for the plaintiff, for the amount of both items of his account, to which the defendant excepted.

*A. Howard*, for the defendant.

*S. M. Gleason*, for the plaintiff.

ALDIS, J. I. The auditor finds that the plaintiff worked two Sundays in the sugar-place, at the request of the defendant, " when it was necessary in order to save a great waste of sap." The necessity of the work is established, unless in the eye of the law it never can be necessary to work on Sunday to prevent a great waste of sap.

In the business of making maple sugar, it is extremely difficult to tell when there will be an abundant flow of sap, and to provide fully for it. Perhaps there is nothing in ordinary farm work more uncertain. When the weather is just right and the advance of spring, the frost, the snow, the air and the sunshine, are propitious, there will sometimes be an extraordinary flow of sap, calling for much extra labor to save it, though lasting perhaps

only one, two or three days. The opportunity well improved secures to the farmer an abundant reward, and constitutes the chief profit of the season :—neglected, a great loss is incurred. We cannot say that it would be unnecessary in all cases to prevent such waste. A religious man would by gathering his sap on Saturday, and by furnishing ample storage for it, provide as far as possible against such necessity. Still, unavoidable circumstances may produce the necessity. Indeed the individual condition and necessities of each man may go far to determine whether it is his duty to labor on Sunday to save property from destruction. The saving of a piece of property to one man might prevent great misery and suffering to himself and family —to another it might be of no consequence. It is easy to suppose cases where every one would recognize the duty of working on Sunday to prevent the immediate destruction of property—as in the case suggested by counsel of the burning of a dwelling-house. But it is needless to dwell on the point.

II. The term of service was one year—but with this proviso —that each party might terminate the contract *at any time* if he should become dissatisfied and should desire to so terminate it. It was not—" if he had good reason to be dissatisfied," as in *Patrick* v. *Putnam*, 27 Vt. 759 ; or " if the cause of dissatistaction could not be removed," as in *Seaver* v. *Morse*, 20 Vt. 620. Here each party reserved the right to judge of the cause of dissatisfaction for himself—and, if really dissatified, to put an end to the contract. It is like *Prevost* v. *Harwood*, in the 29th Vt. 219, where the plaintiff reserved the right " to quit at any time if dissatisfied." The court held in that case that the plaintiff's leaving the defendant's service *without cause* was no violation of the contract. But here he had cause. It is said, however, that in that case the plaintiff only recovered what his services were worth for the time. But as the plaintiff took no exceptions in the case and only claimed what the services were reasonably worth, the question whether he could have recovered according to the *contract* price did not arise. The same is true in *Hubbard* v. *Belden*, 27 Vt. 645. But as there was no breach of contract by the plaintiff, as in leaving he only exercised his right under the contract—a right which belonged alike to each party—we

think he has in fact fully performed according to the terms of the bargain, and can recover the contract price.

The cases which have been cited where the party is excused from full performance by sickness stand upon a different ground. Such are *Fenton* v. *Clark*, 11 Vt., *Seaver* v. *Morse*, 20 Vt., and *Hubbard* v. *Belden*, and *Patrick* v. *Putnam*, in the 27th Vt.

Judgment affirmed.