STATE *v.* PETER COROLOGOS ET AL.

May Term, 1928.

Present: WATSON, C. J., POWERS, SLACK, MOULTON, and CHASE, JJ.

Opinion filed October 3, 1928.

*W. W. Lapoint, A. A. Sargent,* and *J. W. Gordon* for the respondents.

*Elwin L. Scott,* State's attorney, for the State.

SLACK, J. The respondents were convicted in the Barre city court of a violation of the provision of Act No. 215 of the

Laws of 1921, which reads as follows: "A person shall not between twelve o'clock Saturday night and twelve o'clock the following Sunday night, exercise any secular business or employment, except works of necessity or charity."

The undisputed evidence upon which the conviction was had showed that the Barre Candy Kitchen, so-called, of which respondent Corologos was proprietor and respondent Lamperti an employee, was open to the public for business on the afternoon and evening of Sunday, April 10, 1927, and that during that time each respondent therein sold to divers persons ice cream, sundaes, milk shake, hot chocolate, and lemon sour.

The chief question raised by the exceptions is whether the business or employment in which the evidence tends to show respondents were engaged was one of "necessity" within the meaning of the statute. Although all of the statutes of this State enjoining the performance of certain secular business and employment on the Sabbath, the first of which was passed in 1787 (See R. 1787, p. 134), have expressly recognized as permissible work of necessity or charity (necessity or mercy was the language of the original act), this is the first time this Court has been called upon in a prosecution for a violation of those statutes to consider the meaning of the word "necessity" as therein used. If this word is to be given its scientific or physical meaning, that is, if the business or employment meant by the statute must be essential, indispensable, or impossible to forego, the meaning of the statute is plain, and its application is attended with no difficulty. That it should not be given this limited meaning we entertain no doubt. We, in effect, held otherwise in *McClary* v. *Lowell,* 44 Vt. 116, 8 A. R. 366, and in *Whitcomb* v. *Gilman,* 35 Vt. 297, and we assume that that interpretation met with public approval since there has been no attempt to change the statute then in force to avoid the effect of such interpretation. We are now asked to give a far broader meaning to this statute.than was necessary in those cases. Indeed, by the motion for a directed verdict we are asked to say, as a matter of law, that the business in which the evidence tends to show respondents were engaged was necessary within the meaning to be given the statute at the present time. To do this would require us to hold that such business was so clearly a work of necessity that reasonable minds could not differ on that question. This we are not prepared to do under any interpreta-

tion of the word that has come to our attention. The word "necessity" as here used, was doubtless intended to mean not a physical or absolute necessity, but a moral fitness and propriety of the business or employment engaged in, under the circumstances of each particular case. Such was the meaning given this word in *Flagg* v. *Millbury,* 4 Cush. (Mass.) 243, a case frequently cited, and followed in *McClary* v. *Lowell, supra.* See, also, cases collected in Words and Phrases, vol. 5, p. 4729 *et seq.* If the Court could have gone a step farther in those cases and said what work was morally fit and proper to be done on Sunday, it would have rendered an invaluable service, but the nature of the subject and the exigencies of society made this impossible. Manifestly, no fixed and unvarying definition of the word as here used can be given. What may not be necessary under one set of circumstances may be necessary under different circumstances. While it would not be considered necessary for a person to move his household goods from one place to another on the Sabbath, under ordinary circumstances; no one would question the moral fitness and propriety of his doing so to save them from fire or flood. Gathering sap on Sunday to prevent a great waste thereof was regarded a work of necessity in *Whitcomb* v. *Gilman, supra.* So, too, a journey on the Sabbath to visit one's children who were properly away from home was held lawful under a statute prohibiting travel on that day, except from necessity or charity. *McClary* v. *Lowell, supra.* On the other hand, we held in *Holcomb* v. *Danby,* 51 Vt. 428, that a journey on the Sunday simply because the traveler wanted all of the week days for work did not constitute either a legal or a moral necessity. Turning to the cases in other jurisdictions, we find that the courts have held many things to be works of necessity under existing circumstances and conditions of society, and have condemned many others, but have been unable to formulate any rule of universal application. 37 Cyc. 552 *et seq;* 25 R. C. L. 1418-1423. In this situation there is no course for us to pursue other than to ascertain the meaning of this statute by applying the same rules of construction that would be applied in construing other statutes. The statute should have a reasonable construction so as to promote the end for which it was enacted, and thus cover every class of business or employment other than those that fall within the exception namely, such as are necessary or charitable. It is apparent that the

word necessity should not be held to mean the same thing now that it did when the original act was passed, since many things that were then deemed luxuries, or did not exist at all, are now regarded as necessaries. It is a matter of common knowledge that a physician, and perhaps a trained nurse, are now deemed necessary in many cases that were formerly treated with household remedies. Other equally striking illustrations attesting the changed view regarding necessaries during the past forty, or even twenty, years might be given, but this is needless since they are known to all. Then, too, the tendency of public opinion in this State respecting Sunday observance is evidenced by various legislative enactments. The law prohibiting Sunday travel, except for certain purposes, was repealed in 1894, since which time such travel has been lawful. *Boyden, Admr.* v. *Fitchburg Railroad Co.*, 72 Vt. 89, 47 Atl. 400. And in 1921, by the very act under consideration, the inhibition respecting certain games, sports, and amusements was removed, and the same are now lawful if no admission is charged, or the public peace is not thereby disturbed. We are satisfied that the word "necessity" should be construed with reference to the present conception of its meaning. This does not mean, of course, that business or employment which is merely convenient, agreeable, desirable or profitable for the one engaged therein, or for another, can be lawfully excused as necessary. The element of necessity is just as essential to justify the exercise of a business or employment on the Sabbath as it ever was, but what constitutes a necessity depends upon the circumstances of each particular case considered in the light of present-day conditions and requirements. If it be objected that this leaves the question unsettled, with nothing for future guidance, we can only reply that that is not our fault. Instead of expressly prohibiting certain business and employment on the Sabbath, as is done in some of the states, our Legislature has seen fit to prohibit only such business and employment as cannot be excused as necessary or charitable. In this situation it becomes necessary to determine in each case whether the business or employment falls within the excused class; and this question is ordinarily for the jury. It was so in this case, and the motion for a verdict was properly denied.

Respondents' 1st, 5th, and 9th requests to charge were properly denied since they included, or were broad enough

to do so, the sale of commodities not in question, and, therefore, called for the determination of matters not here involved. Nos. 2, 3 and 4 should have been complied with in substance, since they embody the views herein expressed concerning the meaning of the word necessity. No. 6 is simply a statement of an abstract principle of law, not applicable to the case made by the evidence, and failure to comply therewith was not error. *Vermont Box Co.* v. *Hanks,* 92 Vt. 92, 101, 102 Atl. 91. Nos. 7 and 8 in effect ask for an instruction that unless it appeared that someone (who is not indicated) suffered from lack of rest, or suffered physical or moral debility because of the acts complained of, respondents should be acquitted. If for no other reason, these requests were too indefinite to require notice.

▪██ The charge of the court, taken as a whole, was such that the jury might well have understood that nothing short of dire necessity for the things purchased would excuse their sale by the respondents. This was error. "Dire" according to Webster's New International Dict. means "dreadful, dismal, horrible, terrible, lamentable." A need or demand of such extreme nature is not required by the statute to excuse the exercise of a business or employment on the Sabbath. A reasonable necessity is all that need be shown. The State contends that the respondents were not harmed by this erroneous charge since some of its witnesses testified on cross-examination that they did not need the things they purchased, but got them simply because they wanted them. This evidence, if competent (See *Bovee* v. *Danville,* 53 Vt. 183), did not obviate the necessity for a correct charge respecting the meaning of the statute. The guilt or innocence of the respondents was to be determined upon all the evidence in the case, under proper instructions as to its application. The instructions given were not only improper in the particular above mentioned, but were well calculated to prejudice the respondents.

▪█ The respondents saved nine exceptions to the exclusion of evidence, all of which are now relied upon. Regarding these exceptions respondents' brief, in effect, does no more than to restate what was said in taking them, which we have repeatedly held to be inadequate briefing. *Temple et ux.* v. *Atwood,* 100 Vt. 371, 137 Atl. 321; *State* v. *Wood,* 99 Vt. 490, 134 Atl. 697, 48 A. L. R. 985; *McAllister* v. *Benjamin,* 96 Vt. 497, 121 Atl. 263. Moreover, these exceptions are all briefed to-

gether, and it is said in the brief that they all relate to the exclusion of evidence which tended to prove the "customs, usages, practices and necessities of the people today." The record fails to support this claim. One exception was to the exclusion of evidence which tended only to show that there was no disturbance or loud talk in or about the place in question; and two were to the exclusion of evidence which merely tended to show that the State's attorney had informed respondent Corologos that he could keep his place open during certain hours on Sunday. Under this method of briefing these exceptions do not require consideration, since this Court will not search the record to find error upon which to predicate a reversal. *Goodrich* v. *Fuller*, 99 Vt. 6, 130 Atl. 679. See, also, *Hall* v. *Windsor Savings Bank*, 97 Vt. 125, 140, 121 Atl. 582, 124 Atl. 593. But assuming that under the present mode of living the commodities in question have attained the dignity of necessaries the same as meat, butter, sugar, eggs, etc., an indiscriminate sale of them on the Sabbath to all who desire to purchase, regardless of necessity, cannot be excused under this statute. No one has ever had the temerity to claim that the butcher or grocer can keep open market on Sunday simply because the articles in which they deal constitute necessaries. Admitting that a reasonable necessity for any commodity may excuse a sale thereof on Sunday, nothing short of such necessity will excuse it. To hold otherwise would be to repeal, in effect, the express limitation imposed by the Legislature.

The respondents offered to show that two other parties kept their respective places open on the Sunday in question, and therein sold ice cream to various persons. The evidence was excluded and the respondents excepted. It was, and is, claimed that this evidence tended to show discrimination against the respondents. If so, it was a discrimination in the administration of the law and not in the law itself, and manifestly had no bearing on the question of respondents' guilt or innocence. One offender cannot excuse his conduct by showing that someone else equally guilty has not been prosecuted.

*Judgment reversed, sentence set aside, and cause remanded.*