SOUTH EUCLID (CITY), PLAINTIFF, v. BONDY, DEFENDANT.

South Euclid Municipal Court, Cuyahoga County.

No. 5624. Decided July 5, 1963.

*Mr. Harvey Starkoff*, for defendant.

*Mr. John Angelotta*, prosecuting attorney, for City of South Euclid.

KLEIN, J. On Sunday April 28, 1963, one MARVIN DRONZEK purchased a paint brush for 19c from the Defendant, ALLEN C. BONDY, at a hardware store located at 4504 Mayfield Road, South Euclid, Ohio. The Defendant BONDY is one of the proprietors of said hardware store.

On May 1, 1963, MARVIN DRONZEK executed the following affidavit:

"Before me, MARJORIE WALTERS, Clerk of South Euclid Municipal Court, personally appeared MARVIN DRONZEK, 4084 Okalona Road, who being duly sworn according to law, deposes and says, that on or about the 28th day of April, 1963, at the City of South Euclid, in said County and State, one, ALLEN C. BONDY did unlawfully engage in common labor at 4504 Mayfield Road in said City or suffered or permitted a building at said address in said City to be open for the transaction of business on Sunday; that affiant purchased one SEEBEE Paint Brush for 19c from ALLEN C. BONDY at 4504 Mayfield Road, South Euclid, Ohio, on Sunday; and all in violation of Section 3773.24, Revised Code, and further says not.

(Affiant) MARVIN DRONZEK

"Sworn to and subscribed before me, this 1st day of May, 1963.

MARJORIE M. WALTERS,
Clerk of the Municipal Court."

On May 2, 1963, John Angelotta, the Prosecuting Attorney

for the City of South Euclid, Ohio, filed the following Complaint in the South Euclid Municipal Court:

"The undersigned, Prosecuting Attorney of the City of South Euclid, complains that on or about the 28th day of April, 1963, one Allen C. Bondy did unlawfully engage in common labor by selling a paint brush on Sunday in a building which he permitted to be open on said day at 4504 Mayfield Road, South Euclid, Ohio, based on an Affidavit of Marvin Dronzek filed with me.

(Signed)   John Angelotta,
           Prosecuting Attorney
           City of South Euclid."

Pursuant to said Complaint, this matter came to trial on May 29, 1963, at which time it was stipulated that approximately fifteen other stores were open on Sunday in the City of South Euclid, and that it is the administrative policy of the City to enforce Section 3773.24, Revised Code, only if a private citizen files an affidavit charging a violation of said statute. This is the first case of this type which has been brought before the South Euclid Municipal Court.

## THE LAW

The defense of the Defendant is predicated on the following four grounds:

1. Defective affidavit.
2. Entrapment.
3. Discriminatory enforcement of the equal protection clause of the State and Federal Constitutions.
4. The City of South Euclid did not prove beyond a reasonable doubt that the defendant violated Section 3773.24, Revised Code.

Each of these defenses will be discussed in the order set forth above:

DEFECTIVE AFFIDAVIT:

The Court cannot accept defendant's contention that the affidavit is defective because it does not contain a negative averment that the Sunday sale was not "work of necessity or charity." (*Billigheimer* v. *State*, 32 Ohio St., 435; *Hirn* v. *State*, 1 Ohio St., 16; *Cheadle* v. *State*, 4 Ohio St., 477; *Becher* v. *State*, 8 Ohio St., 391; *Stanglein* v. *State*, 17 Ohio St., 453; *Moody* v. *State*, 17 Ohio St., 110; *Hale* v. *State,* 58 Ohio St., 676,

51 N. E., 154.) This identical argument was rejected by the Court of Appeals of Cuyahoga County on December 7, 1953, in *State* v. *Haase*, 97 Ohio App., 377, 116 N. E. (2d), 224, wherein the Court stated as follows:

"But under the law of Ohio, unless such negative averment is necessary as a part of the description of the crime charged, it need not be alleged in the complaint or established by evidence as a part of the State's case." 116 N. E. (2d), 226.

ENTRAPMENT:

The defendant's defense that the action of Dronzek and his associates constituted an "Entrapment" is also without merit. "Entrapment" is defined in 15 Ohio Jurisprudence (2d), Criminal Law, Section 245, Pages 429-430 as follows:

"—'Entrapment,' as that word is used in the consideration of defenses to criminal prosecution, is improper inducement to commit a crime. *The gist of the entrapment is that the entrapper instigated the offense and then incited the accused to commit it for the purpose of prosecution. Where the criminal intent originates in the mind of the entrapping person, and* the accused is lured into the commission of the offense in order to prosecute him therefore, the general rule is that no conviction may be had, although the criminality of the act is not affected by any question of consent. If the defendant is urged on by a state agent to commit a crime, and the circumstances of the urging are strong enough to shift the origination of the crime from the mind of the defendant to that of the agent, the defense of entrapment is available to the defendant. When an officer has no grounds for suspicion and induces a person to commit a crime simply for the purpose of making an arrest, his conduct constitutes entrapment.

"On the other hand, the courts of many jurisdictions are agreed that if the criminal intent originates in the mind of the accused, and the criminal offense is completed, the fact that an opportunity is furnished, or that the accused is aided in the commission of the crime in order to secure the evidence necessary to prosecute him therefor, constitutes no defense. - - -" (Emphasis added.)

Since the criminal intent to be open on Sunday was not instigated, encouraged, or urged upon the defendant by Dronzek, or by anyone associated with Dronzek in making the Sun-

day purchase, the defense of "Entrapment" is not available in this case.

## DISCRIMINATORY ENFORCEMENT OF THE EQUAL PROTECTION CLAUSE OF THE STATE AND FEDERAL CONSTITUTIONS:

The defendant's contention that the action of the City of South Euclid denies the defendant the equal protection of the law in violation of the Ohio and Federal Constitutions cannot be accepted. This argument is predicated on the fact that the City of South Euclid has permitted approximately fifteen other businesses to remain open on Sunday, and that the defendant Bondy is the only businessman in the City being prosecuted for violation of the Sunday Blue Law. Again, this very argument was raised by the defendant, and rejected by the Cuyahoga County Court of Appeals, in the *Haase case*, wherein the Court stated as follows:

But these are matters which come exclusively within the jurisdiction of law enforcing officers, legislative bodies and educational leaders. Courts must impartially interpret the law in cases commenced within their respective jurisdictions. *The fact that one person is prosecuted and another is not, is a subject with which the court cannot deal.*

In the case of *State of Vermont* v. *Corologos,* 101 Vt., 300, 143 A., 284, 287, 59 A. L. R., 1541, the court, in dealing with this question as a defense, said:

"If so, it was a discrimination in the administration of the law and not the law itself, and manifestly had no bearing on the question of respondent's guilt or innocense. *One offender cannot excuse his conduct by showing that some one else equally guilty has not been prosecuted.*" 116 N. E. (2d), 230. (Emphasis added.)

The defendant has relied very heavily on the recent New York case of *People* v. *Utica Daw's Drug Company,* 225 New York Supplement Second Series 128 (Supreme Court, Appellate Division, Fourth Department). This case contains a scholarly discussion of the equal protection clause of the Constitution of the United States and the Constitution of the State of New York; however, the facts are clearly distinguishable from those in the case at bar. The *Utica Drug case* was one in which a new trial was ordered because the trial court had

excluded evidence that the City of Utica was enforcing the Sunday Blue Law against *discount* drug stores *only* (defendant claimed arbitrary and intentional discrimination in enforcement). The Court stated that "If—there was *an intentional and purposeful discrimination*, the Court should quash the prosecution, not because the defendant is not guilty of the crime charged, but because the Court, as an agency of government, should not lend itself to a prosecution the maintenance of which would violate the constitutional rights of the defendant"; however the court qualified its conclusion with the following admonition:

"*A heavy burden rests on the defendant* to establish conscious, intentional discrimination—." (Emphasis added.)

In the opinion of this Court, the defendant Bondy has failed to sustain this "heavy burden." *State* v. *Kleich*, 76 Ohio Law Abs., 180 (1956); *People* v. *Friedman*, 302 N. Y., 75; *Taylor* v. *Pine Bluff*, 289 S. W. (2d), 679, cert. den., 352 U. S., 894; *Hickinbothan* v. *State*, 303 S. W. (2d), 565[1]. In fact, there was not one iota of real evidence that the City of South Euclid was intentionally discriminating against the defendant Bondy, but rather, it was established that the City had a publicly declared policy of enforcing the Blue Law against local business *only* when an affidavit filed by a private citizen brought the purported violation to its attention. There was nothing in the record of this trial which indicated that affidavits by private citizens directed against any of the other fifteen businesses open on Sunday have ever been filed. The door to do so is apparently wide open to everyone. True enough, the defendant Bondy is the first to be prosecuted for a violation of this law. But, as with violators of every law, someone has to be first. With respect to the enforcement of Section 3773.24, Revised Code, by the City of South Euclid, the defendant Bondy, had the poor fortune to be first. But, "tomorrow," may bring the full force of the City against all persons who openly and flagrantly violate Section 3773.24, Revised Code. The record in this case indicates that further prosecution awaits nothing

---

1. There is nothing in the record of this case to indicate that there are any Hardware Store owners in the City of South Euclid (except Bondy) who desire to remain open on Sunday.

more than the filing of an affidavit. In fact, there is no reason to believe that affidavits against all fifteen of those currently violating the Sunday Blue Law, signed by the defendant Bondy himself, will not bring before the bar of justice every violator of this law.

The fact that the prosecution of Section 3773.24, Revised Code, must be effectuated by complaint does not make the city a party to a conspiracy to close the defendant Bondy's hardware store, if there be any conspiracy. The city cannot, by indirection, become an instigator to a proceeding when the evidence establishes the contrary to be the actual situation. There was not one iota of real evidence[2] upon which this Court could even infer that the City had anything whatsoever to do with shopping the defendant's store on Sunday, April 28th; therefore, this court cannot, by devious logic, sustain the argument that the city was a party to a purported conspiracy against this defendant.

Nor does the fact that the affiant Dronzek is an attorney, duly licensed by the State of Ohio, involve the State in these proceedings. This Court cannot see anything inherently illegal in four hardware store dealers in neighboring communities, all of whom have been required to observe the Sunday Blue Law hiring an attorney to advise them on how to close a competing hardware store in a neighboring city. Furthermore, if this attorney, or one of his associate attorneys, voluntarily agrees to make a Sunday purchase and sign an affidavit, this court cannot see anything inherently evil or illegal in this procedure. When Dronzek made the Sunday purchase, he was not doing so in his capacity as an officer of this court, or as a duly licensed authority of the State of Ohio, but rather as a volunteer in a cause. The fact that he happened to be an attorney licensed to practice in Ohio was merely an incidental or inconsequential circumstance. Certainly, he was not doing anything improper or illegal when he participated in an action which would culminate in the enforcement of a constitutional law of this state.

---

2. There was some hearsay testimony by Marvin Elrad that Law Director Robert Jaffe 'had ordered' Bondy to close his store; however this was never substantiated (neither Bondy or Jaffe ever took the stand); was never even argued by the defendant in its brief; and was inferentially contradicted by the tesimony of Joseph Kalk.

THE CITY OF SOUTH EUCLID DID NOT PROVE BEYOND A REASONABLE DOUBT THAT THE DEFENDANT VIOLATED SECTION 3773.24 OF THE REVISED CODE OF OHIO:

The court cannot accept this final contention of the defendant. The City established all of the essential allegations set forth in the affidavit and complaint beyond a reasonable doubt. The City proved that on Sunday April 28th the defendant Bondy sold Marvin Dronzek a paint brush for 19c at his hardware store at 4504 Mayfield Road, South Euclid, Ohio, at a time when this store was open to the public for the transaction of business. The City was not required to prove anything more to establish a violation of the State Blue Law.

The court has carefully examined the cases of *State* v. *Bowman*, 116 Ohio App., 285 (February 4, 1963) and *State* v. *Schottenstein*, 91 Ohio Law Abs., 209 (Municipal Court of Cincinnati) relied on by the defendant. Neither of these cases, however, contain anything to bolster the defendant's position. Both the *Bowman and Schottenstein cases* hold that a prosecution under Section 3773.24, Revised Code, must be instigated by Complaint. However, this was precisely how the instant case was brought before this court. The *Schottenstein case* also holds that the affidavit must allege that business was transacted on Sunday. However, the affidavit in the case at bar complied with this requirement by alleging that the defendant sold a nineteen cent paint brush to Marvin Dronzek on Sunday, April 28th.

For the foregoing reasons the Motion to Quash the Affidavit is overruled and it is the conclusion of this court that the defendant is guilty of violating Section 3773.24, Revised Code. The court assesses a fine of $25.00.

Before concluding, the Court would like to point out that it is not unmindful of the fact that on any Sunday one can look directly across the street from where the defendant's store is located and see a large chain drugstore open for business and selling many of the items handled by hardware stores, such as grass seeds, picture hangers, fertilizer, etc. On any Sunday, one can look up the street from where the defendant's store is located and see customers moving in and out of the Lawson Milk Store at the rate of about six a minute. On any Sunday,

customers literally swarm around the garden stores a little more than a stone's throw to the west of the defendant's hardware store, and it is no secret that these stores are selling a very large number of the same items as are sold in hardware stores. There can hardly be any question that the Sabbath Day is not being observed in the general area of the defendant's store, but rather "commercialism is running rampant."

In the light of the above, the Court is cognizant of the dilemma which faces the defendant Bondy. However, the South Euclid Municipal Court has a sworn obligation to enforce the laws of Ohio and to respect the decision of its superior court (*State* v. *Haase, supra*). This Court has no right to consider personal feelings. This is a nation of laws, not men, and these laws must be complied with. However, it is indeed unfortunate when the enforcement of a law results in such flagrant inequities. Only last Sunday, this writer observed the jam-packed parking lot of a Sparten Store at the edge of the Lakeland Freeway. Not far away from the vigorous Sunday activity surrounding this store, other similar type businesses are closed by the act of city authorities in enforcing Section 3773.24, Revised Code, a statewide law applicable to all. The injustice in such a situation causes many men, due to a lack of understanding, to lose respect for the law. This is a bad, if not a dangerous, situation. It is especially evil when it occurs in our great democracy. But this law is a State law. If there are any defects in it, they can only be solved by the legislative body which enacted it. Frankly speaking, the only way that it will ever be solved is if the State Legislature enacts a fair law which will be understood by everyone, resulting in its being enforced in an equal manner in every community throughout the State, or, in the alternative, if the State creates the machinery to enforce the law.

Only this week, an article appeared in the Cleveland Plain Dealer about a judge in Findlay, Ohio, who threw thirteen Sunday Blue Law cases out of court because he felt that the law was "vague and meaningless" and because it required the Court to "become a lawmaker, and lawmaking is not part of the judicial function." Although this Court has not read these decisions, from the newspaper account, they appear to be

similar to the result reached by the Honorable Judge Burns of The Euclid Municipal Court (Judge Burns' decision was subsequently reversed by a higher court). In any event, as far as applying Section 3773.24, Revised Code, to hardware stores, this law is not "vague" (*State* v. *Haase, supra*), and this Court cannot, in the exercise of its judicial obligation, follow the lead of the Findlay, Ohio court. But, in concluding, it must be emphasized that there is a "crying and immediate need" for the enactment of a Sunday Blue Law which will receive uniform enforcement throughout the State. For unless some uniformity and equality in enforcement is effectuated, the only other solution will be to repeal the law in its entirety, rather than having it remain on the books, be enforced unequally, and risk the people losing faith in our American system of jurisprudence.

