SOUTH EUCLID (CITY), PLAINTIFF, *v.* BONDY, DEFENDANT.

South Euclid Municipal Court, Cuyahoga County.

No. 6183.    Decided July 14, 1964.

*Mr. John Angelotta*, city prosecutor, for South Euclid (City).
*Mr. Harvey Starkoff*, for defendant.

## THE FACTS

KLEIN, J.   On October 14, 1963, One HARVEY YODER executed an Affidavit alleging a violation of the Sunday Blue Law by the defendant ALLEN C. BONDY on Sunday October 6, 1963.   The same day the Affidavit was executed, the South Euclid Prosecutor filed a Complaint based on the allegations in the Affidavit.

This case has a long history.   The October 14th Complaint is not the first time the defendant BONDY has been brought before this Court by the City of South Euclid charged with making a sale on Sunday in violation of Section 3773.24, Revised Code.   Rather, this is the third such occasion.   On May 2, 1963, the South Euclid Prosecutor filed a Complaint (based on an Affidavit executed by one MARVIN DRONZEK) charging BONDY with selling a 19c paint brush on Sunday April 28. A trial was had pursuant to this Complaint.   During the course of this trial, it was stipulated that fifteen other businesses (i. e. a Lawson Milk Store, various garden stores, drugstores, etc.) were open on Sunday and that it was the administrative policy of the City of South Euclid to enforce Section 3773.24, Revised Code, only if a private citizen filed an Affidavit charging a violation thereof.   On July 5, 1963, this Court rendered a written opinion (See *City of South Euclid* v. *BONDY*, 192 N. E. (2d), 139, 92 Ohio Law Abs., 108), wherein the defendant was found guilty and assessed a $25.00 fine.   During the course of this trial, BONDY'S attorney claimed discriminatory enforcement of the Sunday Blue Law by the City of South Euclid in violation of the equal protection clauses of the State and Federal Constitutions.   In rejecting this contention, this Court stated as follows:

"True enough, the defendant BONDY is the first to be prosecuted for a violation of this law.   But, as with violators of every law, someone has to be first.   With respect to the enforcement of Section 3773.24, Revised Code, by the City of South Euclid, the defendant BONDY, had the poor fortune to be first. *But, 'tomorrow,' may bring the full force of the City against all persons who openly and flagrantly violate Section 3773.24, Revised Code.*"   (Emphasis added.)   192 N. E. (2d), 142.

However, after finding the defendant guilty, this Court

questioned the morality of the present status of Sunday Blue enforcement as follows:

"Before concluding, the Court would like to point out that it is not unmindful of the fact that on any Sunday one can look directly across the street from where the defendant's store is located and see a large chain drugstore open for business and selling many of the items handled by hardware stores, such as grass seeds, picture hangers, fertilizer, etc. On any Sunday, one can look up the street from where the defendant's store is located and see customers moving in and out of the Lawson Milk Store at the rate of about six a minute. On any Sunday, customers literally swarm around the garden stores a little more than a stone's throw to the west of the defendant's hardware store, and it is no secret that these stores are selling a very large number of the same items as are sold in hardware stores. There can hardly be any question that the Sabbath Day is not being observed in the general area of the defendant's store, but rather 'commercialism is running rampant.'

"In the light of the above, the Court is cognizant of the dilemma which faces the defendant BONDY. However, the South Euclid Municipal Court has a sworn obligation to enforce the laws of Ohio and to respect the decision of its superior court (*State* v. *Haase, supra*). This Court has no right to consider personal feelings. This is a nation of laws, not men, and these laws must be complied with. However, it is indeed unfortunate when the enforcement of a law results in such flagrant inequities. Only last Sunday, this writer observed the jam-packed parking lot of a Spartan Store at the edge of the Lakeland Freeway. Not far away from the vigorous Sunday activity surrounding this store, other similar type businesses are closed by the act of city authorities in enforcing Section 3773.24, Revised Code, a statewide law applicable to all. The injustice in such a situation causes many men, due to a lack of understanding, to lose respect for the law. This is a bad, if not a dangerous, situation. It is especially evil when it occurs in our great democracy—" 192 N. E. (2d), 143-144.

The second time the defendant BONDY was charged with a violation of Section 3773.24, Revised Code, was on June 24, 1963. (The Complaint on this occasion was based on an Affidavit filed by Harvey Yoder.) A Motion for Dismissal was granted

when it developed that the Affidavit and Complaint were defective.

The Complaint dated 10/14/63 is, therefore, the third time the defendant BONDY has been brought before this Court by the City of South Euclid for violating Section 3773.24, Revised Code. On January 15, 1964, the defendant filed a Motion to Quash this third prosecution of the defendant BONDY on the ground that the City of South Euclid is enforcing the Sunday Blue Law in a discriminatory manner in violation of the equal protection clauses of the State and Federal Constitutions. By agreement, the facts relative to both the Motion to Quash and to the merits were presented to this Court in the following Stipulation dated March 21, 1964:

"(1) The affidavit filed in this case is incorporated by reference.

"(2) Since case number 5624 entitled *City of South Euclid* v. *Allen C. Bondy*' was heard in this court on or about June 4, 1963, there has been no other arrest in the City of South Euclid for violation of Section 3773.24, Revised Code.

"(3) The City of South Euclid has a publicly declared policy of enforcement against local business only upon sworn affidavit of a private citizen whereupon an arrest warrant is issued for the alleged violation.

"(4) It is further stipulated that since June 4, 1963, approximately sixteen retail merchants including grocery stores, dairies, hardware stores, fruit stands and other similar merchants have been open on Sunday continuously or at their own private convenience whatever Sundays they desire and there have been no other arrests during this time of these merchants.

"(5) Mr. Harvey Yoder did purchase from the defendant the material set forth in the affidavit herein on the date in question. That said Harvey Yoder is not and was not a resident of South Euclid. That said Harvey Yoder traveled to the defendant's store for the express purpose of making a purchase with the intention of then signing an affidavit causing issuance of the warrant to arrest."

## THE LAW

In deciding this case, the Court is on the horns of a dilemma. On one hand, it is confronted with the following well established rules of law:

"The fact that one person is prosecuted and another is not, is a subject with which the court cannot deal." *State* v. *Haase*, 97 Ohio App., 377, 116 N. E. (2d), 224, 230.

"One offender cannot excuse his conduct by showing that someone else equally guilty has not been prosecuted." *State of Vermont* v. *Corologos*, 101 Vt., 300, 143 A., 284, 287, 59 A. L. R., 1541.

On the other hand, there is the legal principle enunciated by the United States Supreme Court that discriminatory enforcement of the law is forbidden (*Yick Wo* v. *Hopkins*, 118 U. S., 356, 6 S. Ct., 1064, 30 L. Ed., 220). In *People* v. *Utica Daw's Drug Company*, 225 N. Y. S. (2d), 128, this rule of law was set forth as follows:

"If the court finds that there was an intentional and purposeful discrimination, the court should quash the prosecution, not because the defendant is not guilty of the crime charged, but because the court, as an agency of government, should not lend itself to a prosecution the maintenance of which would violate the constitutional rights of the defendant." 225 N. Y. S. (2d), 132.

\* \* \* \* \* \*

"The claim of discriminatory enforcement does not go to the question of the guilt or innocence of the defendant, which is within the province of the jury. The question is rather whether in a community in which there is general disregard of a particular law with the acquiescence of the public authorities, the authorities should be allowed sporadically to select a single defendant or a single class of defendants for prosecution because of personal animosity or some other illegitimate reason. The wrong sought to be prevented is a wrong by the public authorities. *To allow such arbitrary and discriminatory enforcement of a generally disregarded law is to place in the hands of the police and the prosecutor a power of the type frequently invoked in countries ruled by a dictator but wholly out of harmony with the principle of equal justice under law prevailing in democratic societies.* The court is asked to stop the prosecution at the threshold, not because the defendant is innocent but because the public authorities are guilty of a wrong in engaging in a course of conduct designed to discriminate unconstitution-

ally against the defendant." (Emphasis added.) 225 N. Y. S. (2d), 133.

Although over 14 months have passed since BONDY was first charged and although it has been stipulated that fifteen or sixteen other stores have been transacting business on Sunday, no one (other than the defendant BONDY) has been arrested for violating this law. Although, there has been no proof that the authorities of the City of South Euclid engaged in a conspiracy with Dronzek and Yoder (the persons who executed the Affidavits against BONDY) to force BONDY to close on Sunday; nevertheless, having arrested the defendant BONDY three times for violating this law while many other merchants engage freely in Sunday business activity, the City of South Euclid is approaching a point where further prosecutions of BONDY would violate the State and Federal Constitutions (assuming other businesses which were open on Sunday were not prosecuted). Although it is true that all three of the Complaints filed by the South Euclid Prosecutor were based on Affidavits of private citizens, it is equally true that a prosecution for violating the Sunday Blue Law is not effectuated by the mere filing of such an Affidavit, but, rather, it can only be commenced by the City Prosecutor filing a Complaint. (*State* v. *Bowman*, 116 Ohio App., 285.) Since the City Prosecutor is not legally compelled to file a Complaint every time a private citizen executes an Affidavit alleging a violation of the Sunday Blue Law, it is apparent that the City is, by necessity, an essential party to a prosecution. It would, therefore, seem apparent that a City cannot continually prosecute one businessman for a violation of a law while other persons, equally guilty, openly and notoriously violate the same law with impunity. At some point of time, such conduct by a City must inevitably become tantamount to an intentional and purposeful discrimination in violation of the equal protection clauses of the State and Federal Constitutions. The City of South Euclid's policy of enforcing the Sunday Blue Law as applied to the defendant BONDY is coming dangerously close to becoming such a discriminatory enforcement. However, in the opinion of this Court, the City's conduct has not quite reached that point where this Court would be justified in concluding that it constituted a "conscious intentional discrimination" in violation of the equal protection

clauses of the State and Federal Constitutions. *People* v. *Utica Drug, supra; Snowden* v. *Hughes,* 321 U. S., 1, 64 S. Ct., 397, 88 L. Ed., 497.

In view of the above, the Court is compelled to find BONDY guilty. He is sentenced to five days in jail and fined $50.00. (This is the minimum fine permitted by law for a second offence under Section 3773.24, Revised Code.)

As far as enforcing Section 3773.24, Revised Code, is concerned, the City of South Euclid has sought to choose a course of least resistance—a course which lacks the courage of any conviction. The City Administration has not had the intestinal fortitude to affirm that it will enforce the Blue Laws of the State of Ohio as it is legally required to do—nor has it had the determination to state that it will not enforce these laws against South Euclid businessmen when merchants in competitive businesses in neighboring communities are free to transact business on Sunday. Because the City of South Euclid has relinquished its obligation to enforce this law to chance—or to the will and whim of disillusioned competitors, hotheads, and others; the defendant BONDY is being knocked from pillar to post because he is open a few hours on Sunday while other businesses, many much larger and much more commercial, go merrily on their way selling merchandise on the Sabbath Day.

BONDY has stated publicly that he will close his business on Sunday if others will do the same. He has pleaded his case eloquently before the Mayor, Law Director, and other officials of South Euclid—but to no avail. Since his public plea, he has been charged twice with violating this law. It is no wonder he is bewildered and disillusioned with what can happen under our American system.

In the opinion of this Court, a City Administration should not violate the principles of equal justice because of a fear that, by taking a stand on an issue, a few voters may be alienated. A court is often required to make a difficult, sometimes unpopular, decision. It is not easy for a judge to assess a fine against a person he knows and respects—or decide a case against a lawyer of long acquaintanceship—or refuse to grant a favor or concession. When this writer has ended a day's work with a heavy heart, because, in fulfilling his obligation to administer justice fairly and impartially, he has had to perform an un-

304

pleasant task, he reflects on certain lines written by William Shakespeare—

"This above all: to thine own self be true, And it must follow, as the night the day, Thou canst not then be false to any man." (Hamlet Act I, Scene 3. Line 75.)

City officials, just as courts, have an obligation to act courageously—to take a positive stand on an issue. They too have a sacred obligation to enforce the laws equally and impartially.

BONDY has not merely been prosecuted for violating Section 3773.24, Revised Code. At this point, he is being persecuted. This is a shameful thing to be happening in our great democracy.

For the reasons set forth above, it is the opinion of this Court that the ends of justice would not be served by having BONDY pay a $50.00 fine and serve five days in the County Jail. To impose such a penalty would only give credence to the statement made by Mr. Bumble—"If the law supposes that - - - The law is a ass, a idiot" (Oliver Twist by Charles Dickens, Chapter 51).

$50.00 fine, costs, and five-day jail sentence suspended.