THE STATE OF OHIO, APPELLEE, *v.* STEURER, APPELLANT.
THE STATE OF OHIO, APPELLEE, *v.* BARR, APPELLANT.
THE STATE OF OHIO, APPELLEE, *v.* EMERY, APPELLANT.
THE STATE OF OHIO, APPELLEE, *v.* GEORGE, APPELLANT.

(Nos. 7166, 7167, 7168 and 7169—Decided August 1, 1973.)

*Mr. Stephan M. Gabalac*, prosecuting attorney, and *Mr. Harold K. Stubbs*, for appellee.

*Mr. John M. Glenn* and *Mr. Donald A. Powell*, for appellants.

HUNSICKER, J. These cases arise as appeals of a denial of motions by the trial judge, who was asked, in each case, to declare void a judgment of guilty, based upon the alleged grounds of the discriminatory enforcement of a criminal statute, and from the judgment rendered, in each case, on the plea of guilty entered on February 8, 1973.

We proceed to determine the issue, in each case, as a final appealable order. No question as to the right of appeal is raised, or that the offense herein is *malum prohibi-*

*tum* and not *malum in se.* A violation of rights guaranteed by the Constitution is properly raised in this manner by motion. *People* v. *Utica Daw's Drug Co.,* 16 App. Div. 2d 12, 225 N. Y. S. 2d 128.

In case No. 7166, the defendant (appellant), John M. Steurer, on February 8, 1973, pleaded guilty to the offense of "sale of security without a license." He had previously pleaded not guilty and, upon trial to a jury, was found guilty of five counts of "sale of security without a license," and guilty of five counts of "sale of unregistered security." Thereafter, the jury verdict was set aside, and a guilty plea was entered to five counts of "sale of security without a license," and the five counts of "sale of unregistered security" were nolled.

A pre-sentence investigation was made, and testimony of Dennis Shaul, director of commerce of the state of Ohio, was taken.

Although the penalty may be incarceration in the Ohio State Penitentiary, the trial judge ordered that Steurer, and the other defendants (appellants) be placed on probation. The trial judge also made a recommendation to the Governor of Ohio that Steurer, and the other defendants be granted clemency.

A notice of appeal was duly filed by John M. Steurer. Three other individuals, who had also pleaded guilty at the same time to similar offenses, also filed notices of appeal. These defendants are Edward F. Barr (case No. 71-67), W. C. Emery, a. k. a. Wilbur C. Emery (case No. 71-68); and George George (case No. 7169). In each instance, the judgment entry lists the offense as "sale of security without a license."

Identical transcripts of proceedings, and briefs, have been filed in each of the four cases before us, and such cases were argued and presented to us jointly. We, therefore, present only one opinion covering the questions raised.

Each of the instant cases arose from a scheme concocted by an Akron lawyer, D. Don Lowers, who was later incarcerated in a federal prison. Lowers claimed that he purchased unclaimed goods of various kinds from freight

haulers and sold this merchandise at a great profit. Many persons in the Akron area loaned him money, which, until the scheme collapsed, he would repay with high interest for the short term loans. He gave notes bearing a lawful rate of interest but the repayment would, many times, amount to from 15% to 30% interest. He was able to do this by borrowing from one lender to pay previous lenders. These defendants and other persons, numbering fifty to sixty-five, assisted in the scheme by selling notes, signed by Lowers, to various people in Summit County. In the nine years (1963 to 1972) that Lowers conducted his fraudulent enterprise, 1100 to 1500 people loaned him $11,000,-000 or more, in order to receive the exorbitant interest he promised.

Only fourteen persons, of the many who were engaged in selling Lowers' notes, were indicted for a violation of R. C. 1707.44. It is clear that these people did not know of the nefarious scheme Lowers was fostering

Counsel, prior to trial, and prior to the plea of guilty, raised the question of a denial of the equal protection of the law as guaranteed by the Fourteenth Amendment to the Constitution of the United States, and Article I, Section 2 of the Constitution of the state of Ohio. The trial court overruled all motions directed to this subject.

It is because of this selection of only a few, of the many alleged violators in the Lowers' scheme, to be indicted and prosecuted, that these defendants claim error prejudicial to their substantial rights. They claim that:

"1. [The trial court erred in failing to rule that] a criminal law which in practice is not equally applied and enforced by reason of the conscious failure and refusal of law enforcement officers and the grand jury to indict some persons while indicting others on the basis of an arbitrary, capricious, and unjustifiable classification may not be enforced in such cases by reason of the guarantees of Article I, Section 2 of the Ohio Bill of Rights, Article II, Section 26 of the Ohio Constitution, and the 14th Amendment to the United States Constitution.

"2. The trial court erred in failing to rule that a crimi-

nal law which purports to invest discretion in law enforcement officers not to present evidence of criminality to a grand jury is violative of Article I, Section 2 of the Ohio Bill of Rights, Article II, Section 26 of the Ohio Constitution, and the 14th Amendment to the United States Constitution.

"3. The trial court erred in failing to dismiss the indictment when it appeared that the prosecutor or any other unauthorized persons attended grand jury proceedings and remained in the room with jurors while jurors were expressing their views or giving votes on matters before them.

"4. The trial court erred in failing to require the state to rebut the prima facie evidence of defendant as to the unconstitutionality of the indictment in this case."

R. C. Chapter 1707 covers the subject of securities, their sale, regulation, and registration for sale in this state. R. C. 1707.23 defines the enforcement powers of the division of securities. This section, in part, provides:

"Whenever it appears to the division of securities, from its files, upon complaint, or otherwise, that any person has engaged in, is engaged in, or is about to engage in any practice declared to be illegal or prohibited by sections 1707.01 to 1707.45, inclusive, of the Revised Code, or defined as fraudulent in such sections, or any other deceptive scheme or practice in connection with the sale of securities, or when the division believes it to be in the best interests of the public and necessary for the protection of investors, the division may:
"* * *

"(E) Initiate criminal proceedings under section 1707.44 of the Revised Code by laying before the prosecuting attorney of the proper county any evidence of criminality which shall come to its knowledge; and in the event of the neglect or refusal of the prosecuting attorney to prosecute such violations, the division shall submit such evidence to the attorney general, who may proceed in the prosecution with all the rights, privileges, and powers conferred by law on prosecuting attorneys, including the pow-

er to appear before grand juries and to interrogate witnesses before such grand juries * * *.''

There are six other provisions, in R. C. 1707.23 for the enforcement of the claim of illegal activities on the part of those against whom a complaint is made. The securities division, by this statute, has broad power to initiate, or not to initiate criminal proceedings. In the four instant cases (as well as in ten other cases), the securities division, after the matter was brought to their attention, divided the violations into three categories.

Lowers, who was the perpetrator of the scheme, was placed in category number one. As to the second category, Mr. Shaul, the director of commerce (under whose direction the division of securities operates), said:

''* * * There was a second class of people, how broad the dimensions were to be, is a discretionary judgment made by the Prosecutor and the Grand Jury in this instance. That class of people are those who had in some instances operated as though they were engaged in a business of being lenders to the operation or had engaged to the extent that they differentiated themselves at least from the third class of people, those who were involved in the scheme and who may have been involved in a felony violation technically, but who had not conducted or as a business been engaged in the activity in the same manner that class two or Lowers himself had been.''

The third group were neither prosecuted nor recommended for prosecution. There were some statements by counsel, and Mr. Shaul, that other similar offenses (unrelated to these cases), arising in this community, were not recommended for prosecution, based largely on the broad discretionary terms of R. C. 1707.23 and the equal discretion lodged in the division of securities as to whom to recommend for prosecution of a violation. Thus, out of 65 violators of the law, in the Lowers matter, as stated by the principal investigator of the division of securities assigned to this case, a few were selected to be indicted. As indicated in the transcript of proceedings, only those with ten or more sales were brought to court. Those with nine or

less apparently escaped the fate of these defendants.

The assignments of error are of such a nature that the first two may be discussed together with assignment of error number four. Assignment of error number three has been investigated, and we find no proper evidence submitted in these cases that shows the claim made in such assignment. We reject assignment of error number three.

We direct our attention to the question, under the above undisputed or uncontroverted facts, whether there was a constitutionally impermissible enforcement of the law. In other words, does the fundamental law of this state, and nation, as interpreted by the courts, permit any administrative agency or government to select, as between probable violators of the same offense, those whom it chooses to punish, and those whom it chooses not to punish. Does this intentional discrimination, as to the ones to prosecute, result in an invalid prosecution, or must all of them be prosecuted, regardless of the degree of their activity?

The justification for the selection of fourteen out of sixty-five or more probable violators is, according to the plaintiff, that the fourteen were in the "business" of selling securities, although the section of R. C. 1707.44 that provides for the crime makes no such distinction. The fourteen violators sold more "Lowers notes" than some other violators. It is probably true that these defendants had greater opportunity to participate in selling the promissory notes, but Mr. Horden testified that all sixty-five were engaged in the same acts. There is a statement by the prosecutor that perhaps a hundred or more were, in some measure, engaged in this process.

We do not deem it necessary to set out verbatim herein Article I, Section 2 of the Ohio Bill of Rights; Article II, Section 26 of the Constitution of Ohio; and the Fourteenth Amendment to the Constitution of the United States. It is the above portions of our fundamental law that are the basis for the claim that there has been a constitutionally impermissible prosecution of the defendants. The above sections relate to the requirement that all laws have a uniform

application, and no person in this country shall be denied the equal protection of its laws.

To indicate the effectiveness of these constitutional provisions, we have been cited numerous cases. In the leading case of *Yick Wo* v. *Hopkins* (1888), 118 U. S. 356, 373, 30 L. ed 220, 227, the court said:

"Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution."

In *United States* v. *Falk*, No. 71-1213. C. R. 515, 7th Circuit U. S. Court of Appeals, January 1973 Session, the court said:

"The promise of equal protection of the laws is not limited to the enactment of fair and impartial legislation, but necessarily extends to the application of these laws."

The Supreme Court of Ohio, in *Ohio ex rel.* v. *Ferris*, 53 Ohio St. 314 (paragraph four of the syllabus), said:

"The first section of the fourteenth amendment to the constitution of the United States, which provides that no state shall 'deny to any person within its jurisdiction the equal protection of the laws,' is not, as to the question in this case, broader than the second section of our bill of rights."

The essential elements necessary to make a general law operate uniformly has been well stated in *State, ex rel. English*, v. *Industrial Commission*, 160 Ohio St. 443 at 448, 449. We believe that these elements are properly applied to both civil and criminal statutes. Constitutional guarantees apply to the unequal enforcement of valid laws as well as to the enforcement of valid laws. See *East Coast Lumber Terminal* v. *Town of Babylon* (C. C. A. 2), 174 F. 2d 106 at 112, 8 A. L. R. 2d 1219.

Although the rule established by *Yick Wo* v. *Hopkins, supra,* has remained an accepted pronouncement of the law, that case applied to the acts of a board of supervision

(a legislative and administrative agency), and not to the acts of a law enforcement agency. The rule still remains unclear as to the applicability of *Yick Wo* to discriminatory penal enforcement.

Does the equal protection clause guarantee to those who violate the law equal protection from prosecution? There are cases which hold that a failure to prosecute other violators does not bar a conviction of one who is prosecuted. The cases seem to hold that something more than a failure to prosecute is necessary before there can be a declaration of a void conviction.

In *Oyler* v. *Boles,* 368 U. S. 448 at 456, the court said: "* * * the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." This was later followed in *Newman* v. *United States* (D. C. Cir.), 382 F. 2d 479. See, also: *United States* v. *Crowthers* (C. C. A. 4), 456 F. 2d 1074 and *Washington* v. *United States* (D. C. Cir.), 401 F. 2d 915. In *United States* v. *Steele* (C. C. A. 9), 461 F. 2d 1148, the above rule was followed, but the court discharged Steele on the basis that his evidence established that the authorities purposely discriminated against him. Prosecutorial discretion does not excuse the government; there must be something more to prevent a reversal of conviction. That "something more" is a rational basis for the selection of the person to prosecute. The Constitution condemns unreasonable discrimination by state action. *Brown* v. *Board of Education,* 347 U. S. 483 (the famous school case, which was not a criminal matter).

Many of the reported cases, where constitutional claims such as we have herein have arisen, have been concerned with discrimination in the enforcement of Sunday closing laws. In *Moss* v. *Hornig* (C. C. A. 2), 314 F. 2d 89, a shoe store proprietor sought to enjoin the enforcement of a Sunday closing law upon a showing that only two persons in one district of the state had been prosecuted as against the many who were open for business. The court, at page 92, said:

"Mere failure to prosecute other offenders is no basis for a finding of denial of equal protection. * * * To show

that unequal administration of a state statute offends the equal protection clause one must show an intentional or purposeful discrimination.

This is the rule set out in *Snowden* v. *Hughes,* 321 U. S. 1 at 8.

Ohio seems to support the rule above stated. *South Euclid* v. *Bondy,* 28 Ohio Op. 2d 316; and *State* v. *Haase,* 97 Ohio App. 377.

The rule which the cases uphold in disciminatory enforcement claims demands that intentional or systematic discrimination is necessary before one may be discharged on the basis of a violation of the equal protection clause. This rule has generally been applied in administrative or legislative matters. *Sunday Lake Iron Co.* v. *Township of Wakefield,* 247 U. S. 350, 62 L. ed 1154; *Snowden* v. *Hughes, supra; Brown* v. *Board of Education, supra.* There are few cases of penal application and those are chiefly (as we said above), due to a failure to enforce Sunday closing laws. *Taylor* v. *Pine Bluff,* 226 Ark. 309, 289 S. W. 2d 679.

There seems to be no great overriding reason why discriminatory enforcement claims should not apply to penal cases, as well as to administrative and legislative matters. Some cases uphold the right of intentional selection, and the right of the prosecuting officials to exercise a discretion in the matter of whom to prosecute, so long as there is no unjustifiable standard adopted, such as race, religion or other arbitrary classification.

We have been cited, and we have read, with interest, the following articles: *The Right to Nondiscriminatory Enforcement of State Penal Laws,* 61 Colum. L. R. 1103 (1961); and *Discriminatory Law Enforcement and Equal Protection From The Law,* 59 Yale L. J. 354 (1950).

In 4 ALR 3d 404, et seq., there is an annotation on the subject herein in which the rules established by the cases (some of which we have cited above) are stated to be, at page 410 [c], as follows:

"* * * it is insufficient merely to show that other offenders have not been prosecuted; or that there has been laxity of enforcement, or that there has been [as herein] a

conscious exercise of selectivity in enforcement, but there must be sufficient evidence presented to establish the existence of intentional or purposeful discrimination which is deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.''

In the instant case, we do not find a sufficient deviation from the rule set out to justify this court in determining that the exercise of selectivity as to the defendants, which was engaged in by the division of securities, the grand jury, or the prosecuting attorney of Summit County, is constitutionally impermissible.

The judgment overruling the motion to quash the prosecution is affirmed, in each case.

We have examined all claims of error and, for the reasons above stated, we find none prejudicial to the substantial rights of the appellants herein. The orders of the trial court, and the judgments, from which these appeals were taken, are affirmed.

*Judgments affirmed.*

BRENNEMAN, P. J., and VICTOR, J., concur.

HUNSICKER, J., retired, assigned to active duty under authority of Section 6 (C), Article IV, Constitution.