Charles J. Gaughan, J.
On June 6, 1963, at approximately 11:15 a.m., two members of the Central Investigation Bureau of the Buffalo Police Department observed Joseph Sapp operating an automobile on Sycamore Street, in the City of Buffalo. The detectives were riding in an unmarked police car. Detective Michel recognized Sapp as a person arrested in approximately 1952 for a policy violation while he was a member of the “ old gambling squad.” Offering no reason therefor, the detectives followed Joseph Sapp. Sapp drove north on Pratt Street to Genesee, where he properly -signalled and made a right turn. Sapp then proceeded east on Genesee to Spring where he prop *82 erly 'signalled, turned left, and travelled north towards Cherry Street. Cherry Street, at which Spring ends, runs generally' east and west and is a one-way street eastbound. At this intersection, Sapp turned right and continued in an easterly direction on Cherry. However, he did not give notice of his intention to do so, by failing to signal with his hand or turn signal indicator, as required by the Vehicle and Traffic Law. Sapp was halted by the detectives a few minutes later on Jefferson near High Street. When S'app was halted he was advised that he made a turn without signalling. (It is indeed interesting to note that Detective Michel’s testimony reveals that the alleged failure to signal occurred at an intersection where the defendant could do only one thing, turn right, which he did.) He was asked for his driver’s license and registration, both of which were produced, and he got out of his car. While Detective Spano was examining these items, Detective Michel proceeded to look under the dashboard and front seat of Sapp’s car. He found only a two-foot length of tree branch. This is the testimony of what followed:
“ Detective Michel * * * I told him he was under arrest and we were going to take him in. I also said, ‘ We have had several complaints on you, Joe.’
“ Assistant District Attorney * * * Are you familiar with this defendant? A. Yes.
“ Q. G-o on. A. I asked him, ‘ Why are you writing numbers again? ’ I said, ‘ Do you want to give them to me now or at the ■station house ? ’ He reached in his shirt pocket and pulled out two envelopes, and handed them to me.”
The unmarked envelopes contained papers recording 136 policy bets. Sapp was later searched at Buffalo Police Headquarters, but no further incriminating matter was found. A summons for the traffic violation was issued at headquarters since the detectives did not have a summons book with them. On cross-examination, Detective Michel stated that he stopped and arrested Sapp for failing to signal for a right turn because “ It’s the only thing we saw him do.”
Joseph Sapp now stands indicted for violating section 974-a of the Penal Law. He moves herein for an order suppressing the policy 'slips which were in his possession that day. A hearing was not conducted on the motion, the record of the felony hearing in the. City. Court of Buffalo having been stipulated as the undisputed, facts herein. • . .
The defendánt claims that the police unlawfully obtained the policy slips by a search which was not incident to a lawful arrest. *83 The District Attorney, in contravention, claimed that the policy slips were obtained through consent or voluntary surrender by the defendant.
The burden is upon the District Attorney to prove by clear and convincing evidence that a person consented to a search for, or voluntarily surrendered property, the possession of which is unlawful or would implicate him in a crime. The District Attorney failed in his burden by not submitting anything which would alter the perspective of the facts in the record. The surrender of the policy slips by the defendant was no more a voluntary act than it was his voluntary act to accompany the detectives to Police Headquarters after his arrest, that is, he was complying with apparent lawful authority.
The defendant does not dispute that police have the authority to arrest for a traffic offense, nor does he contend that they lack the authority to search a person arrested for a traffic offense. His contention is that the police cannot use a traffic offense as a ruse to justify a search for evidence of some other offense or crime. As nearly as can be ascertained, this question has been considered in New York courts only once before, in the dictum in People v. Isaac (38 Misc 2d 1018, 1021): “ A different rule may apply when the traffic arrest is a mere pretext used by the police in an attempt to justify a search for the fruits or instrumentalities of some unrelated crime (see Taglavore v. United States, supra).” In Taglavore v. United States (291 F. 2d 262) police officers observed the defendant operating an automobile having faulty brake and signal lights, and they saw him fail to signal for a right turn. They did not stop the defendant because they were busy. A warrant for the traffic violations was obtained the next day and served upon the defendant after his employer was arrested for a narcotics violation. Narcotics were found on the defendant as a result of a search made of Ms person after the arrest on the warrant. The police testified that they assumed the defendant would have marijuana cigarettes in his possession and that they intended to search him for the such cigarettes after the arrest. In holding this search unlawful, the court stated (p. 265): “ Where the arrest is only a sham or front being used as an excuse for making a search, the arrest itself and the ensuing search are illegal. Worthington v. United States, 6 Cir., 1948, 166 F. 2d 557; Henderson v. United States, 4 Cir., 1926, 12 F. 2d 528, 51 A. L. R. 420. 'An arrest may not be used as a pretext to search for evidence, ’ United States v. Lefkowitz, 1932, 285 U. S. 452, 467, 52 S. Ct. 420, 424, 76 L. Ed. 877. To put it in other words, the search must be incident to the arrest, and not vice versa.”
*84 It appears clear from the record before us that the detectives followed the defendant to observe whether he was engaged in policy violations. Having observed no illicit activities other than the traffic offense, they seized upon this as an excuse to effectuate a search of the defendant and his automobile for evidence of policy violations. This search is held to be unlawful and unreasonable under the rationale of the Taglavore case, not being incident to a lawful arrest, but the sole reason for the arrest of the defendant. The motion to suppress is granted.