Douglas F. Young, J.
This is a motion to suppress evidencb seized from defendant’s person and other evidence seized subsequently at his home. The arresting officer saw the defendant driving a car on Jericho Turnpike and recognized him as a person to whom he had given a summons on a previous occasion for failure to have a driver’s license. Defendant appeared confused and passed a red light. The officer stopped the defendant, who does not speak English, and inquired in broken Spanish and English for his documents. Defendant produced a registration but had no driver’s license with him and indicated that he did not possess a license. At this point, the officer testified, he decided to arrest the defendant. However, since his orders required that he obtain consent of his superior to effect an arrest for a traffic violation, he radioed to his Sergeant. The latter appeared in a few minutes and granted the permission. An arrest was made at this point and the court makes a finding of fact to that effect. The officer then conducted a search of defendant’s person outside the car and found in his pocket a stack of papers which proved to be policy slips.
Defendant was taken to the station house and interrogated. Patrolman Torres, a Spanish-speaking officer, was called to act as interpreter. After interrogation in which defendant was alleged to have admitted having policy slips at his home, a written form (in the English language) purporting to grant consent to the police to search his home and seize any articles they desired was executed by defendant. Patrolman Torres attempted a translation and an explanation of this document to defendant; defendant subscribed it; a search of the home was made which produced more policy slips and some tally sheets. The court is asked to suppress the fruits of the two searches.
I hold that the arrest for driving without a license was a valid arrest based on the commission of a misdemeanor in the presence of the officer.
The first question posed by the facts as found in this case is: In a situation where a valid arrest is made for a traffic *553 violation which constitutes a crime, is a contemporaneous search of the person of the violator lawful and, if so, to what extent is such a search reasonable?
In order to define the issue precisely we shall eliminate cases involving situations which are similar in some respects but not squarely in point on the facts.
Therefore we eliminate the cases having to do with arrests for traffic violations as pretexts for searches to obtain evidence of other crimes. In this case there is no claim that the arrest was a subterfuge or ruse (Taglavore v. United States, 291 F. 2d 262; People v. Sapp, 43 Misc 2d 81).
We exclude cases involving searches of passengers (United States v. Di Re, 332 U. S. 581).
We also eliminate situations where the basis for the arrest is a minor traffic infraction and not the commission of a traffic crime, although we think this distinction is not too significant since New York law equates the two for procedural purposes (Squadrito v. Griebsch, 1 N Y 2d 471). Similarly we eliminate cases involving traffic violations where a summons was issued and no arrest was made. Much discussion could be devoted to the distinction to be drawn between the case when a summons is issued for a future appearance in court and the case of an arrest (sometimes termed a summary arrest) where the officer takes the accused in custody and escorts him to the police station for booking and arraignment. (See, e.g., Agata, “ Searches and Seizures Incident to Traffic Violations ”, 6 St. Louis Univ. L. J., Fall, 1961, p. 9 et seq.) As this is not the factual situation we deal with here, we need not be concerned with this distinction.
We exclude cases where a visual inspection of the occupant or automobile, without a search, revealed a weapon or other contraband to the officer (People v. Lopez, 19 A D 2d 809; People v. Jordan, 37 Misc 2d 33).
Also eliminated are cases where the question involved the legality of a search of the automobile, rather than a search of the person of the defendant (Carroll v. United States, 267 U. S. 132; People v. Gonzales, 356 Mich. 247). Finally we eliminate cases where the search to be tested was not contemporaneous with the arrest (Stoner v. California, 376 U. S. 483; Preston v. United States, 376 U. S. 364; People v. Beaman, 44 Misc 2d 336).
Investigation has failed to reveal recent judicial authority specifically on the point of the permissible extent of a search of the person of defendant under the circumstances at hand (a traffic violation arrest). The great majority of reported *554 cases on searches contemporaneous with arrests deal with the extent to which a Search of an automobile or of fixed premises is reasonable. Often courts assume without inquiry that the right to a search of the person automatically follows a valid arrest and they do not go further to consider the question of whether there is any constitutional limit to the extent of such a search of the person (United States v. Rabinowitz, 339 U. S. 56, 60, 61; People v. Preston, 376 U. S. 364, 367).
One voice, however, has spoken out loud and bold, like Chapman’s Homer. In his book, “ 'Current Problems in the Law of Search and Seizure ”, Gould Publications, 1964, Judge Sobel states categorically that no search based on an arrest for a traffic violation is reasonable, be it ever so gentle and limited. He condemns searches of the person, even as to searches for weapons, in such cases. He says, at page 119: “ Do the police have the right to search the person or automobile following a lawful arrest for a traffic violation? The answer is an unequivocal ‘NO!’ despite many cases to the contrary.” (Italics added.)
Judge Sobel’s argument is that any search without a warrant, based on a contemporaneous arrest, must be incidental to the crime for which the arrest is made. Hence the search must be for instrumentalities, fruits, evidence, or weapons incidental to the crime providing the basis for the arrest. This accords with the generally accepted doctrine as it was expressed in Agnello v. United States (269 U. S. 20) (as quoted hereinafter), with one important exception. The exception is that Judge Sobel contends vigorously that even as to weapons no search is permissible in the circumstances of an arrest for a traffic crime because where there is a search for weapons that too must be an incidental search and in no case will weapons have been involved in the commission of a traffic crime (Sobel, op. cit., p. 121 et seq.). For the reasons stated below, I do not subscribe to the view that a search for weapons is not reasonable and permissible as an adjunct to an arrest for a traffic crime, or indeed to any crime.
As indicated, Agnello v. United States (supra) is frequently quoted for a statement of basic principle of the problem we are considering. The pertinent passage from page 30 is as follows: ‘ ‘ The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed, *555 as well as weapons and other things to effect an escape from custody, is not to be doubted. See Carroll v. United States, 267 U. S. 132, 158; Weeks v. United States, 232 U. S. 383, 392.” (Emphasis supplied.)
The basis for the search for weapons is security of the person of the officer and prevention of escape. Danger to the officer is present if the accused possesses a weapon regardless of whether the weapon is in any way related to the crime.-
In a case where the arrest was made by Immigration and Naturalization Service officers instead of police officers, the majority of the United States Supreme Court said: “There can be no doubt that a search for weapons has as much justification here as it has in the ease of an arrest for crime, where it has been recognized as proper. E.g., Agnello v. United States, 269 U. S. 20, 30. It is no less important for government officers, acting under established procedure to effect a deportation arrest rather than one for crime, to protect themselves and to insure that their prisoner retains no means by which to accomplish an escape.” (Abel v. United States, 362 U. S. 217, 236.)
This view is buttressed by the holding of the Court of Appeals in People v. Rivera (14 N Y 2d 441) where a “ frisk ” of a suspected person (i.e., a limited search for weapons) was upheld upon the basis of reasonable suspicion not arising to the level of probable cause to arrest for a crime.
Accordingly I think it settled that the valid arrest permits a search for weapons and that there need be no connection between the weapons and the crime forming the basis for the arrest.
The case of People v. Isaac (38 Misc 2d 1018) has been urged as authority for sustaining a search of the person of an accused which revealed possession of narcotics, following an arrest for a traffic crime. Judge 'Sobel disagrees with this decision (Sobel, op. cit., p. 122) and this writer disagrees also but for a different reason, specifically, the reason described above. In Isaac there was an arrest late at night when defendant failed to produce his registration or to give a satisfactory account of himself. The “ traffic crime ” justified the arrest. The arrest could justify a search for weapons. However, it did not justify a general or “ nonincidental ” search to produce evidence of an unrelated crime.
We come then to the crux of the matter. To what extent is a search of the person reasonable when it is based on an arrest for a traffic crime ?
*556 It is a basic rule that the search must be incidental to the cause of the arrest (United States v. Robinson, 325 F. 2d 391; see, also, People v. Beaman, 44 Misc 2d 336, 337, supra) in which the basic principles and authorities on which they are based are set forth; to the same purpose and effect see Ann. 4 L. ed. 2d 668). The search for weapons is a special exception to the rule based on necessity (the need for security). The exception should not be permitted to extend beyond its purpose of securing the safety of the officer and preventing an escape, by uncovering weapons. (Brinegar v. State, 262 P. 2d 464, 478 [Okla.]; Edwards v. State, 319 P. 2d 1021 [Okla.].)
If the search is strictly for the purpose of uncovering weapons then it does not justify a complete search of the person which would uncover evidence of other unrelated crimes. In short, the search should be in the nature of a “ frisk ’ ’ to detect the presence of “hardware” on the person of the defendant. Thus it would not justify compelling the defendant to turn out his pockets or take off his shoes (Tamplin v. Beach, 49 Col. 516, cited in Ann. 32 A. L. R., p. 687). In the case at hand, we have evidence consisting of paper tickets and it cannot be argued that a detective patting a suspect to locate a revolver or knife could mistake such tickets for a weapon (People v. Zeigler, 358 Mich. 355).
In one case defendant was searched on suspicion and marijuana cigarettes were found. He was arrested. The court sustained the arrest on the ground that under the circumstances a “frisk” for weapons was permissible. To the extent that the case (People v. Norris, 46 Misc 2d 44) appears to justify a search which uncovered marijuana cigarettes by calling it a “ frisk ”, I disagree with the finding.
If the accused is arrested at night and is taken to the police station and cannot or does not make bail, he will be held for arraignment and he will be required to divest himself of the effects on his person before he is put in the detention cell (People v. Wingate, 34 Misc 2d 483). If he is carrying contraband the divestment may produce the same result as a search but that is a separate question with which we are not now involved.
For the reasons stated, the search of defendant’s person was unreasonable and invalid and the evidence uncovered thereby is suppressed.
The branch of the motion directed to the suppression of articles obtained by the search of defendant’s home will now be considered. The sole basis for the search is the alleged consent given by defendant. _:
*557 The People have the burden of proof on the issue of consent (Pekar v. United States, 315 F. 2d 319; Hall v. Warden, 214 Md. 660; Judd v. United States, 190 F. 2d 649).
It is incumbent upon the People to show that any consent relied upon was granted intelligently, willingly, knowingly and not as a submission to authority (Amos v. United States, 255 U. S. 313; Channel v. United States, 285 F. 2d 217).
If defendant was in custody, the alleged consent is weighed with additional suspicion. (Channel v. United States, supra; Judd v. United States, supra.)
If contraband is in the premises, the giving a voluntary consent is rendered even more unlikely (Higgins v. United States, 209 F. 2d 819).
The consent form is in English. At the hearing the interpreter made an effort to provide a translation but he was not able to give a clear rendition of the contents in Spanish or to make a clear explanation of the rights defendant was waiving.
The sweeping effect of the terms of this form, which would authorize the seizure of anything found in the home of the defendant, subtracts from, rather than adds to, its authenticity as the product of a knowing act of the defendant.
Defendant was in custody. He spoke no English. He had no counsel. I find as a fact that the People have failed to sustain the burden of proof of showing that the consent of the defendant to the search of his dwelling was voluntary (People v. Parisi, 42 Misc 2d 607). Accordingly the motion is granted and the materials seized at defendant’s dwelling are suppressed. Upon the foregoing, it is ordered that the motion to suppress the evidence seized by the police is granted.