249 F.Supp. 40 (1965)
UNITED STATES of America
v.
Junius S. WASHINGTON.
Crim. No. 1103-65.
United States District Court District of Columbia.
December 22, 1965.
*41 Richard Coleman, Asst. U. S. Atty., for the United States.
T. E. McKenzie, Washington, D. C., for defendant.
LEONARD P. WALSH, District Judge.
Defendant, Junius S. Washington, moves to suppress, and for the return of, certain seized property namely: numbers slips and money. He alleges that the police procedures which were followed in seizing this property without a warrant were illegal and unconstitutional. We do not agree.
The original arrest in this case was made subsequent to a traffic violation. At approximately 2:15 P.M. on July 22, 1965, the defendant entered his automobile which was parked in the 200 block of Eleventh Street, on the West side. He started his car and made a U-turn east across Eleventh Street. This U-turn caused the traffic on Eleventh Street (one car) to come to a halt. As the defendant completed the turn, an officer of the Metropolitan Police Department flagged him to a stop. The officer was off duty and in plain clothes. He stepped up to defendant's car, identified himself as a police officer, advised defendant of the traffic violation, and asked for his driver's license. Defendant gave the officer his license. While the officer did not verbally inform the defendant that he was under arrest at this time, it is clear that defendant understood his liberty of movement was restrained. He readily submitted to the officer's restraint.
The officer examined the defendant's driver license and then requested to see defendant's registration card. The officer testified that defendant was nervous and hesitant. He once again instructed defendant to get his registration card. The defendant reluctantly opened the glove compartment of his automobile. As he did so, two envelopes fell to the floor, and one envelope fell onto the glove compartment door. (Defendant asserts that the Officer opened the glove compartment himself because he feared the defendant might have had a weapon secured inside).
The officer observed the word "pay", some initials, and some numbers written on the face of the envelopes. He immediately recognized these envelopes as envelopes similar to those frequently used in numbers operations. He turned to defendant and asked him if he was carrying numbers. The defendant admitted he was. He said that he had just begun as a numbers runner a short time ago.
The Officer then informed defendant he was under arrest both for the traffic violation and for the lottery violation. The officer then proceeded to search the remainder of the automobile against defendant's objections. As a result of that search the officer uncovered more numbers slips and a quantity of money.
The original arrest in this case took place at the time the officer waved defendant to a halt and restricted his liberty of movement pursuant to the traffic violation. Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed. 2d 134 (1960). This is true in spite of the officer's testimony that he did not place the defendant under arrest until after the glove compartment had been opened and the numbers slips discovered. "Arrest" is a legal term, and the time of arrest is not necessarily that point in time when the police officer formally proclaims that the accused is being taken into custody. A man is under arrest at that point when the officer has effectively restrained the defendant, and the defendant is cognizant of that restraint. Kelley v. United States, 111 U.S.App. D.C. 396, 298 F.2d 310 (1961).
The traffic arrest preceded the search for the registration card. Thus, the opening of the glove compartment and the subsequent uncovering of the envelopes cannot fall to the defense that the search took place prior to the arrest, as was the case in Lee v. United States, 98 *42 U.S.App.D.C. 97, 232 F.2d 354 (1956), and see Jones v. United States, 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958).
There is some cause to refrain from denominating the officer's inspection of the glove compartment as a search at all, since it occurred in the ordinary course of a traffic arrest, and was not conducted with an intent to uncover evidence of a crime, and therefore it is impossible to speak to the question of probable cause. It did involve an opening and an inspection in the course of a routine traffic investigation. Routine police work cannot legalize unconstitutional searches simply by flying under different colors. Harris v. United States, No. 19,256, United States Circuit Court for the District of Columbia, decided November 19, 1965. We must consider this inspection as a search and we must rule upon its reasonableness.
In speaking to the defendant's position that the officer himself opened the glove compartment because he feared the presence of a weapon, there is presented a very interesting similarity to the recent New York case of People v. Rodriguez, 47 Misc.2d 551, 262 N.Y.S.2d 859 (1965). There the court held that a search of defendant's person after his arrest for a traffic violation, which arrest uncovered policy slips, was unreasonable and invalid. In that case, however, the court indicated that "it is settled that a valid arrest permits a search for weapons * * * there need be no connection between the weapons and the crime." The only question which arose was the reasonableness of the search. And see: Carroll v. United States, 267 U.S. 132, 158, 45 S.Ct. 280, 69 L.Ed. 543 (1924); Weeks v. United States, 232 U.S. 383, 392, 34 S.Ct. 341, 58 L.Ed. 652 (1914); and Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 70 L.Ed. 145 (1925). In the case at bar, the only method which the officer could have used to secure his safety from a possible weapon in the glove compartment was to visually inpect that compartment as it was opened.
This does not suggest that the Court condones the search of an entire automobile pursuant to a traffic arrest. A random search pursuant to an arrest for a minor traffic violation is unreasonable. People v. Gonzales, 356 Mich. 247, 97 N.W.2d 16 (1959). However, the limited inspection of the glove compartment, where defendant himself had indicated his registration card was located, was incident to the arrest in this case, in time, place, and purpose. There is no evidence that the traffic arrest was a mere pretext to validate a search, Hutcherson v. United States, 120 U.S.App. D.C. 274, 345 F.2d 964 (1965), cf. McKnight v. United States, 87 U.S.App. D.C. 151, 183 F.2d 977 (1950); Taglavore v. United States (9th Cir.), 291 F. 2d 262 (1961); People v. Sapp, 43 Misc. 2d 81, 249 N.Y.S.2d 1020 (1964).
Thus, as the lawful police investigation continued uninterrupted, the officer in this case uncovered the numbers slips. Price v. United States, 348 F.2d 68 (D.C.Cir. 1965); Jefferson v. United States and Cooper v. United States, 349 F.2d 714 (D.C.Cir. 1965). At that time the defendant was formally arrested for the numbers violation. The further search of the automobile was incident to the lottery arrest. The defendant had admitted to being a numbers runner and the automobile was obviously being used to aid in the commission of the crime. The officer conducted a search for definite objects which he had reason to believe were in the car. Thus the scope of the search which followed was not unreasonable. An automobile, including its trunk, may be searched without a warrant at the time and place its occupants are placed under lawful arrest. Adams v. United States, 118 U.S. App.D.C. 364, 336 F.2d 752 (1964); Jefferson v. United States and Cooper v. United States, supra. Similar to the Adams case, supra, we are not confronted with the remoteness question presented by Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). and Harris v. United States, supra.
The motion to suppress and for the return of seized property will be denied.
Appropriate order to be submitted.