Junius S. WASHINGTON, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 20267.

United States Court of Appeals
District of Columbia Circuit.

Argued June 30, 1967.

Decided Jan. 31, 1968.

Petition for Rehearing En Banc
Denied April 26, 1968.

Mr. T. Emmett McKenzie, Washington, D. C., for appellant.

Mr. Robert S. Brady, Sp. Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker and David N. Ellenhorn, Asst. U. S. Attys., were on the brief, for appellee.

Before TAMM and ROBINSON, Circuit Judges, and DAVIS,* Judge, United States Court of Claims.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge.

From a parked position at the curb of a public street, appellant drove his automobile in a U-turn directly in front of another car, forcing the driver of the latter to apply his brakes abruptly to avoid a collision. A police officer, who had observed the maneuver, signaled appellant to a stop and asked for his operator's license. Appellant produced the license and the officer, after examining it, requested the registration card for the vehicle. Appellant, ostensibly in response, opened the glove compartment, and from it fell three envelopes. The officer recognized the envelopes as of a type used in numbers operations, and saw figures written on the outside of them. On inquiry as to what they were, appellant admitted that they contained numbers matter and money. Thereupon, the officer told appellant that he was under

* Sitting by designation pursuant to 28 U.S.C. § 293(a).

arrest and ordered him to get out of the car. He was searched immediately, and numbers slips and money were found in a pocket of his trousers. A bag containing still more slips and money was then found under the front seat of the car.[1]

Now convicted by a jury of two violations of the lottery laws,[2] appellant presses three points on this appeal. One [3] pertains to the denial, by District Judge Walsh, of his pre trial motion to suppress the numbers items and money,[4] some of which were introduced into evidence at the trial.[5] The other two [6] emanate from events at the trial, before District Judge Corcoran, now to be related.

On cross-examination of a Government witness, appellant's counsel had an exhibit marked for identification, whereupon the following occurred:

"Q. Now, sir, that document you have in front of you, that newspaper advertisement, that has on it a list of automobile tag numbers, does it not?

"A. That is correct.

"Q. And it has the statement that if you come to the Buick automobile company and your car has the tag matching one of the numbers on that list, that you will win a prize; is that true?

"A. That is correct.

"Q. Now, that piece of paper, sir, that identifies the person who is going to be a winner, does it not? There can be no speculation or doubt about it, can there?

"A. It identifies them by tag number.

"Q. That is right. Everybody knows that whoever has one of those tag numbers is going to win something, is that correct?

"A. That is correct.

"Q. * * * Have you had any occasion to investigate that proposition?

"A. This particular one?

"Q. Yes.

"A. No."

1. The foregoing facts are established by uncontradicted evidence at the trial, at which appellant did not testify.

2. "If any person shall within the District keep, set up, or promote, or be concerned as owner, agent, or clerk, or in any other manner, in managing, carrying on, promoting, or advertising, directly or indirectly, any policy lottery, policy shop, or any lottery, or shall sell or transfer any chance, right, or interest, tangible or intangible, in any policy lottery, or any lottery or shall sell or transfer any ticket, certificate, bill, token, or other device, purporting or intended to guarantee or assure to any person or entitle him to a chance of drawing or obtaining a prize to be drawn in any lottery, or in a game or device commonly known as policy lottery or policy or shall, for himself or another person, sell or transfer, or have in his possession for the purpose of sale or transfer, a chance or ticket in or share of a ticket in any lottery or any such bill, certificate, token, or other device, he shall be fined upon conviction of each said offense not more than $1,000 or be imprisoned not more than three years, or both. The possession of any copy or record of any such chance, right, or interest, or of any such ticket, certificate, bill, token, or other device shall be prima-facie evidence that the possessor of such copy or record did, at the time and place of such possession, keep, set up, or promote, or was at such time and place concerned as owner, agent, or clerk, or otherwise in managing, carrying on, promoting, or advertising a policy lottery, policy shop, or lottery." D.C.Code § 22–1501 (1967 ed.)

"If any person shall, within the District of Columbia, knowingly have in his possession or under his control, any record, notation, receipt, ticket, certificate, bill, slip, token, paper, or writing, current or not current used or to be used in violating the provisions of section 22–1501, 22–1504, or 22–1508, he shall, upon conviction of each such offense, be fined not more than $1,000 or be imprisoned for not more than one year, or both. For the purpose of this section, possession of any record, notation, receipt, ticket, certificate, bill, slip, token, paper, or writing shall be presumed to be knowing possession thereof." D.C.Code § 22–1502 (1967 ed.).

3. Discussed in pt. I hereof.

4. United States v. Washington, 249 F.Supp. 40 (D.D.C.1965).

5. See note 8, *infra*, and related text.

6. Discussed in pt. II hereof.

Defense counsel then proceeded to have another exhibit marked and, as he was apparently about to resume cross-examination, Judge Corcoran, at a bench conference, inquired as to his purpose. Counsel responded:

> " * * * I want to introduce this in evidence. These represent chances on a lottery. On the basis of that, I am going to ask that this statute be declared unconstitutional. It doesn't afford equal protection of the law to my client. I am going to interpose that as a defense under the rules of procedure. * * * "

Then asked by the judge as to the materiality of the first exhibit, counsel explained that "[i]t is a lottery and it exists. The law doesn't apply to those people the same way as it does to my client." Counsel then stated that he had

> " * * * 40 or 50 similar exhibits which I contend will prove the existence of other lotteries in this town which are not made subject to the provisions of the statute; therefore, we should have equal protection of the law."

The judge refused, on the ground of irrelevance, to admit any of the exhibits into evidence.

Our review of appellant's contentions leads to the conclusion that neither affords an acceptable basis for reversal. We therefore affirm, but respond to a need for explication of our reasons for doing so.

## I

■ At the trial, appellant did not renew his motion to suppress,[7] and the Government was permitted to introduce into evidence the numbers items and money which appellant had secreted in his glove compartment and his pocket.[8] The motion, however, preserved for appellate review the objection to prosecutorial use of these materials,[9] so we are brought to a consideration of a single aspect of Judge Walsh's pretrial determination which appellant focuses on here.

At the core of Judge Walsh's ruling was his initial holding that appellant came under arrest for the traffic violation when his car was stopped, although the officer did not proclaim an arrest until after he had seen the telltale envelopes.[10] The officer's "inspection" of the glove compartment as it was opened[11]

---

7. The trial judge is not bound by a pretrial denial of a motion to suppress which in appropriate circumstances is renewed at trial. Cogen v. United States, 278 U.S. 221, 224, 49 S.Ct. 118, 73 L.Ed. 275 (1929); Gouled v. United States, 255 U.S. 298, 312–313, 41 S.Ct. 261, 65 L.Ed. 647 (1921); Rouse v. United States, 123 U.S.App.D.C. 348, 349–350, 359 F.2d 1014, 1015–1016 (1966); Anderson v. United States, 122 U.S.App.D.C. 277, 279, 352 F.2d 945, 947 (1965). See also DiBella v. United States, 369 U.S. 121, 129, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962).

8. The Government never proffered the numbers slips and money found under the seat of the car. At the beginning of the trial, it informed the court and defense counsel that it would not inquire as to that discovery. Appellant's counsel nevertheless opened the subject, and brought out that money and numbers slips which the Government had not produced as evidence had been located under the seat. The Government was thereafter permit-

ted to show testimonially that these materials had not been lost.

9. Waldron v. United States, 95 U.S.App. D.C. 66, 69–71, 219 F.2d 37, 40–42 (1955).

10. United States v. Washington, *supra* note 4, 249 F.Supp. at 41.

11. As we read the court's opinion, this involved merely the officer's observation as appellant opened the door of the glove compartment. Judge Walsh found that after the officer asked for the registration card, appellant "reluctantly opened the glove compartment of his automobile. As he did so, two envelopes fell to the floor, and one envelope fell onto the glove compartment door." United States v. Washington, *supra* note 4, 249 F.Supp. at 41. The judge added that the officer's act "was to visually inspect that compartment as it was opened." *Id.* at 42. This description of the respective roles played by appellant and the officer is thoroughly harmonious with the evidence presented

was treated as a search incidental to that arrest,[12] and the subsequent searches of appellant's person and his automobile as reasonable concomitants of an arrest for the lottery offenses.[13]

Appellant attacks the judge's legal conclusion that the halting of his automobile constituted the act of arrest, pointing to the officer's testimony, and the concordant finding, that no arrest was announced until after the envelopes appellant spilled from the glove compartment were recognized as numbers paraphernalia. He urges us to hold that as a matter of law an unlawful search of the compartment preceded the arrest which the officer effected.

Our appraisal of appellant's thesis begins with close scrutiny of the salient factual findings which Judge Walsh's opinion incorporates. After witnessing

appellant's U-turn and his near-collision with the oncoming automobile, the officer "flagged him to a stop, * * * stepped up to the defendant's car, identified himself as a police officer, advised defendant of the traffic violation, and asked for his driver's license." [14] After checking the license, the officer twice requested the registration card, and in response appellant entered the glove compartment from which the envelopes fell, exposed plainly to the officer's gaze.[15]

 Save in one ill-founded respect,[16] appellant does not challenge these findings, or suggest that the evidence before the judge was insufficient to support them. On the contrary, both the brief [17] and the oral argument [18] presented in appellant's behalf assure us that his claim of illegal arrest accepts the validity of the findings.[19] We do not, on

---

at the trial. And although at the pretrial hearing on the motion to suppress appellant had contended "that the Officer opened the glove compartment himself because he feared the defendant might have had a weapon secured inside," *Id.* at 41, we have searched Judge Walsh's opinion in vain for a finding indicative of any complicity of the officer as respects the compartment greater than that previously stated.

12. United States v. Washington, *supra* note 4, 249 F.Supp. at 42.

13. *Ibid.*

14. *Id.* at 41.

15. *Ibid.*

16. Cross-examination of the arresting officer at trial revealed that the street on which appellant made the U-turn was barricaded at one end, with the result that entering vehicles had to make such a turn to exit. This circumstance, appellant says, shows that his U-turn was not a legal violation. The officer's testimony, however, makes it clear that the violation consisted in considerably more than the U-turn. He explained: "[Appellant] was parked facing south on the west side of the 200 block of 11th Street. He pulled from that position directly east across the middle of the street in front of a car. The driver had to apply his brakes very abruptly in order to avoid striking [appellant's] car." It was this sort of operation that Judge Walsh, as well as the of-

ficer, deemed a violation, United States v. Washington, *supra* note 4, 249 F.Supp. at 41, and we are satisfied that they were correct. See note 21, *infra.*

17. The argument made in the brief, by which we are requested to examine only Judge Walsh's opinion, is based entirely upon quotations from the opinion and from the arresting officer's *trial* testimony.

18. On oral argument before us, appellant's counsel stated that "as far as the search and seizure is concerned we are content to stand upon the remarks made by the trial [*sic*] judge when he denied that motion," and counsel's oral presentation duplicated the technique employed in his brief. See note 19, *infra.*

19. The record on appeal does not contain a transcript of the evidence adduced at the hearing on the motion to suppress but, in the circumstances here, we perceive no need for such a transcript. It is, of course, incumbent upon counsel for an appellant to present a record sufficiently complete to enable an informed determination as to whether assigned error was actually committed. See In re Chapman Coal Co., 196 F.2d 779, 785 (7th Cir. 1952); Thomas v. United States, 281 F. 2d 132, 136–137 (8th Cir.), cert. denied 364 U.S. 904, 81 S.Ct. 239, 5 L.Ed.2d 196 (1960); United States v. Vanegas, 216 F.2d 657, 658 (9th Cir. 1954). Transcripts of the evidence given at pretrial hearings on motions to suppress do not constitute exceptions to this requirement.

the facts found, reach the question whether appellant was actually under arrest at the time the condemnatory envelopes came to light or encounter the myriad difficulties that searches accompanying traffic arrests are apt to involve.[20]

The events leading to discovery of the envelopes occurred after the officer had witnessed appellant's operation of his automobile in clear violation of law,[21] and we think that the officer was justified in detaining appellant temporarily for a purpose congenial to that occasion.[22] In our view, the stopping of an observed traffic offender and an inspection of his credentials to operate the vehicle under his control is not only a commonplace but also a reasonable police procedure.[23] Nothing in the record intimates that appellant's detention grew out of any other purpose, or that it was a subterfuge for a hunt for lottery material.[24]

United States v. Decker, 292 F.2d 89, 91 (6th Cir.) cert. denied 368 U.S. 834, 82 S.Ct. 58, 7 L.Ed.2d 36 (1961); Butler v. United States, 273 F.2d 436, 443 (9th Cir. 1959). Nonetheless, we have had occasion to supplement the record *sua sponte* with the transcript of the pretrial hearing on a motion to suppress where the interests of justice demanded it. Gatewood v. United States, 93 U.S.App.D.C. 226, 230, 209 F.2d 789, 793 (1953). And we will, in any event, look to relevant evidence produced on the trial for any adverse effect it might have upon the admission of the disputed items. Masiello v. United States, 113 U.S.App.D.C. 32, 33, 304 F.2d 399, 401 (1962). See also Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Anderson v. United States, *supra* note 7, 122 U.S.App.D.C. at 279, 352 F.2d at 947 (1965). In this case, however, there is no claim of discrepancy between the arresting officer's pretrial and trial testimony, *cf.* Masiello v. United States, supra, 113 U.S.App.D.C. at 34, 304 F.2d at 401, and, we reiterate, not only are Judge Walsh's factual findings uncontested but we are asked to accept them for purposes of our own ruling. Thus we see no purpose to be served by an unsolicited examination of the evidence undergirding those findings.

20. See Comment, Search and Seizure of an Automobile Incident to an Arrest for an Offense Other than a Traffic Violation, 31 Mo.L.Rev. 436 (1966); Comment, Arrest Without a Warrant, 1959 U.Wis.L. Rev. 489 (1959); Recent Cases, 109 U.Pa. L.Rev. 262 (1960).

21. D.C.Code § 40–605(b) (1967 ed.) (reckless driving); D.C. Traffic and Motor Vehicle Regulations § 44 (limitations on turning around).

22. Rios v. United States, 364 U.S. 253, 261–262, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960); Bailey v. United States, 128 U.S.App.D.C. 354, 389 F.2d 305, at 314–316 (1967)

(concurring opinion). See Brown v. United States, 125 U.S.App.D.C. 43, 46 n. 4, 365 F.2d 976, 979 n. 4 (1966); Jefferson v. United States, 121 U.S.App.D.C. 279, 280, 349 F.2d 714, 715 (1965); Goodwin v. United States, 121 U.S.App.D.C. 9, 10, 347 F.2d 793, 794, cert. denied 382 U.S. 855, 86 S.Ct. 107, 15 L.Ed.2d 93 (1956). See also Dorsey v. United States, 125 U.S. App.D.C. 355, 357–358, 372 F.2d 928, 930–931 (1967).

23. Both the required registration certificate and operator's license must be carried when an automobile is operated on the public streets. D.C.Code §§ 40–104 (a) (1) (C), 40–301(c) (1967 ed.). And compare Goodwin v. United States, *supra* note 22, 121 U.S.App.D.C. at 10, 347 F. 2d at 794; Holloway v. United States, 112 U.S.App.D.C. 190, 191, 301 F.2d 514, 515 (1962); Bell v. United States, 102 U.S. App.D.C. 383, 384–385, 254 F.2d 81, 83–84, cert. denied 358 U.S. 885, 79 S.Ct. 126, 3 L.Ed.2d 113 (1958). See also Brown v. United States, *supra* note 22, 125 U.S. App.D.C. at 44–45, 365 F.2d at 977–978; Jefferson v. United States, *supra* note 22, 121 U.S.App.D.C. at 280, 349 F.2d at 715.

24. See United States v. Lefkowitz, 285 U.S. 452, 467, 52 S.Ct. 420, 76 L.Ed. 877 (1932); Hutcherson v. United States, 120 U.S.App.D.C. 274, 277, 345 F.2d 964, 967, cert. denied 382 U.S. 894, 86 S.Ct. 188, 15 L.Ed.2d 151 (1965); McKnight v. United States, 87 U.S.App.D.C. 151, 152, 183 F.2d 977, 978 (1950); Taglavore v. United States, 291 F.2d 262, 264–266 (9th Cir. 1961). Judge Walsh stated that the officer's "inspection" of the glove compartment, see note 11, *supra,* "was not conducted with an intent to uncover evidence of a crime." United States v. Washington, *supra* note 4, 249 F.Supp. at 42, and that "[t]here is no evidence that the traffic arrest was a mere pretext to validate a search." *Ibid.* We perceive nothing in the trial testimony that is inconsistent with these conclusions.

It was during this investigative pause that appellant, having been asked to exhibit the registration card, opened the glove compartment to obtain it. The officer's observation of the envelopes that then fell from the compartment into his view did not, in our judgment involve a search.[25] Indeed, we are unable to distinguish this episode from that involving another appellant who, reaching into his pocket for his registration card, which in similar circumstances a police officer had requested, inadvertently uncovered a concealed weapon.[26] And with no search, it is quite immaterial that this unimpeachable detention of appellant did not amount to an arrest.[27]

We conclude that the seizure of the numbers paraphernalia which had resided in the glove compartment is without constitutional implication. With that discovery, the officer had probable cause for the ensuing formally-announced arrest for the numbers offenses,[28] and the search of appellant's person immediately after that lawful arrest was itself lawful.[29] We hold that the Government was at liberty to utilize as evidence at the trial, the numbers items and money appellant had in the glove compartment and in the pocket of his trousers.[30]

## II

We proceed now to a consideration of the ruling made by Judge Corcoran at the trial excluding appellant's exhibits from the evidence. In this connection, appellant presents two contentions, only one of which—his equal protection claim—merits elaboration.[31]

25. United States v. Lee, 274 U.S. 559, 563, 47 S.Ct. 746, 71 L.Ed. 1202 (1927); Harris v. United States, 125 U.S.App.D.C. 231, 370 F.2d 477 (en banc 1966), cert. granted 386 U.S. 1003, 87 S.Ct. 1353, 18 L.Ed.2d 432 (1967); Hiet v. United States, 125 U.S.App.D.C. 338, 339, 372 F.2d 911, 912 (1967).

26. Goodwin v. United States, *supra* note 22, 121 U.S.App.D.C. at 10, 347 F.2d at 794. See also Lee v. United States, 95 U.S.App.D.C. 156, 157–158, 221 F.2d 29, 30 (1954).

27. Compare Rios v. United States, *supra* note 22, 364 U.S. at 262, 80 S.Ct. 1431.

28. Compare Keiningham v. United States, 113 U.S.App.D.C. 295, 296–297, 307 F.2d 632, 633–634 (1962), cert. denied 371 U.S. 948, 83 S.Ct. 502, 9 L.Ed.2d 497 (1963); Stephens v. United States, 106 U.S.App.D.C. 249, 250–251, 271 F.2d 832, 833–834 (1959); DeBruhl v. United States, 91 U.S.App.D.C. 125, 126, 199 F.2d 175, 176, cert. denied 344 U.S. 868, 73 S.Ct. 111, 97 L.Ed. 673 (1952); Mills v. United States, 90 U.S.App.D.C. 365, 196 F.2d 600, cert. denied 344 U.S. 826, 73 S.Ct. 27, 97 L.Ed. 643 (1952). And see D. C.Code § 23–306(a), (b) (1967 ed.).

29. United States v. Rabinowitz, 339 U.S. 56, 60–61, 70 S.Ct. 430, 94 L.Ed. 653 (1950); Agnello v. United States, 269 U. S. 20, 30, 46 S.Ct. 4, 70 L.Ed. 145 (1925); Weeks v. United States, 232 U.S. 383, 392, 34 S.Ct. 341, 58 L.Ed. 652 (1914).

30. We express no opinion as to the admissibility of the slips and money later uncovered by a search of the automobile because the Government did not offer these items as evidence at the trial or initiate any inquiry as to them. See note 8, *supra*.

31. His other contention is that the ruling was erroneous because the excluded exhibits tended to prove that the materials found in his possession were not lottery paraphernalia within the meaning of the statutes. Not only was this not urged as a ground for admission when the exhibits were proffered, see Miller v. Avirom, 127 U.S.App.D.C. 367, 369–370, 384 F.2d 319, 321–322 (1967), and cases cited therein, but the exhibits were not made a part of the record on this appeal. See the cases cited in note 19, *supra*, particularly United States v. Vanegas, 216 F.2d at 658. Thus the exhibits are not before us for examination, and the evidentiary virtues appellant attributes to them cannot be left to mere assumption.

Moreover, coupling appellant's asserted purpose with the description in his brief of the two exhibits marked for identification, which from all that appears are representative of the rest, it is plain that they lacked value. He urges that possession of documentary items not containing an express *guaranty* of a chance to win is innocuous and, on the premise that the papers taken from him did not in words assure such a chance while the exhibits he tendered did, he says that he wanted the latter in evidence in order that the jury might compare them all. This position, however, overlooks critical statutory language. D.C.Code § 22–1501

■ We are not entirely clear as to the approach by which appellant would endeavor to make this point. At trial it apparently was that the lottery statutes do not cover certain activities which amount to lotteries. On the other hand, his position here seems to also embrace the claim that other persons violate the statute but are not prosecuted.[32] Since we are uncertain in this regard, our discussion extends to both facets of the problem, which we considered in reaching our conclusions in this case.[33]

■ Appellant's invocation of "equal protection of the law" is obviously a reference to the Equal Protection Clause of the Fourteenth Amendment,[34] which effects a prohibition only on the states.[35] And while the Fifth Amendment, applicable to the Federal Government, exacts due process of law, as the Fourteenth demands of the states, the text of the Fifth omits an explicit guaranty of equal protection. "But the concepts of equal protection and due process, both stemming from our American ideal of fairness, are not mutually exclusive"[36] and, while possibly they are not inexorably congruent,[37] "discrimination may be so unjustifiable as to be violative of due process."[38] We think that it may safely be decided that in the sober relationship of the citizenry to the criminal laws, the Due Process Clause of the Fifth contains the same "pledge of the protection of equal laws"[39] as is evident from

(1967 ed.), upon which the first count of the indictment was predicated, makes the possession of copies or records of certain things prima facie evidence of the promotion of a lottery, and these include "any chance, right, or interest, * * * in any * * * lottery" and "any ticket, * * * token, or other device, *purporting or intended* to guarantee or assure to any person or entitle him to a chance of drawing or obtaining a prize to be drawn in any lottery. * * *" (Emphasis supplied.) See note 2, *supra.* D. C.Code § 22–1502 (1967 ed.), upon which the other count was based, independently penalizes the knowing possession of "any record, notation, receipt, ticket, * * * slip, token, paper, or writing, * * * used or to be used in violating the provisions of section 22–1501. * * *" See note 2, *supra.* Uncontradicted expert testimony at the trial established that the slips and tapes seized from appellant did not expressly promise a chance to win, but that they purported and were intended to make such a guaranty. And see Forte v. United States, 65 App.D.C. 355, 357–359, 83 F.2d 612, 614–616, 105 A.L.R. 300 (1936). In these circumstances, we see no further purpose appellant's exhibits could have served on this aspect of the case.

32. Appellant's motion for a new trial also laid claim to both statutory and prosecutorial discrimination.

33. It might initially be inquired whether the method by which appellant sought to raise these issues was procedurally proper. Claims of statutory discrimination, if tendered in the criminal prosecution itself, can be raised by pretrial motion, on which an evidentiary hearing might be conducted. See United States v. Petrillo, 332 U.S. 1, 4–6, 67 S.Ct. 1538, 91 L. Ed. 1877 (1947). The exclusivity of that method for presenting contentions of prosecutorial discrimination has been both asserted and denied. Compare People v. Utica Daw's Drug Co., 16 A.D.2d 12, 225 N.Y.S.2d 128, 131–136, 4 A.L.R.3d 393 (1962), with People v. Harris, 182 Cal. App.2d Supp. 837, 5 Cal.Rptr. 852 (1960). See also the cases collected in Annot., 4 A.L.R.3d 404–421 (1965). In view of the position we take on the merits, we intimate no opinion as to the procedure.

34. "No State shall * * * deny to any person within its jurisdiction the equal protection of the laws." U.S.Const., amend. XIV, §. 1.

35. Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954); Hirabayashi v. United States, 320 U.S. 81, 100, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943); Detroit Bank v. United States, 317 U.S. 329, 337–338, 63 S.Ct. 297, 87 L.Ed. 304 (1943).

36. Bolling v. Sharpe, *supra* note 35, 347 U.S. at 499, 74 S.Ct. at 694.

37. *Ibid.*

38. *Ibid.*

39. Yick Wo v. Hopkins, 118 U.S. 356, 369, 6 S.Ct. 1064, 1070, 30 L.Ed. 220 (1886).

the Fourteenth.[40] At the same time, it is clear to us that dissimilar treatment which would withstand an assault predicated upon an alleged denial of equal protection under the Fourteenth would not offend due process under the Fifth.[41]

Within constitutional limits, legislative power to define crime is absolute,[42] and even the command of equal protection leaves to the lawmaker much leeway to affect separate groups divergently.[43] "Equal protection does not require identity of treatment. It only requires that classification rest on real and not feigned differences, that the distinction have some relevance to the purpose for which the classification is made, and that the different treatments be not so disparate, relative to the difference in classification, as to be wholly arbitrary."[44]

That a statute treats different persons contrastingly does not, without more, signify that equal protection is wanting[45]. Nor is the showing made by

the additional circumstance that in actuality the law does not apply to all to whom it conceivably could.[46] "A statute is not invalid under the Constitution because it might have gone farther than it did, or because it may not succeed in bringing about the result that it tends to produce." [47] For "[e]vils in the same field may be of different dimensions and proportions, requiring different remedies. * * * Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind.. * * * The legislature may select one phase of one field and apply a remedy there, neglecting the others." [48]

Appellant's effort to demonstrate that the legislative classification complained of denied equal protection thus had to involve not only a difference in treatment, but a difference either based on a constitutionally suspect standard or lacking in rational justification.[49] However, he offered only to show—and this documentarily [50]—that others were

40. For this reason, we freely utilize Fourteenth Amendment precedents. Compare Hirabayashi v. United States, *supra* note 35, 320 U.S. at 100, 63 S.Ct. 1375, 87 L. Ed. 1774; Steward Mach. Co. v. Davis, 301 U.S. 548, 584–585, 57 S.Ct. 883, 81 L.Ed. 1279 (1937). See also Bolling v. Sharpe, *supra* note 35, 347 U.S. at 500, 74 S.Ct. 693; Hurd v. Hodge, 334 U.S. 24, 35–36, 68 S.Ct. 847, 92 L.Ed. 1187 (1948).

41. See Steward Mach. Co. v. Davis, *supra* note 40, 301 U.S. at 584–585, 57 S.Ct. 883.

42. Central Lumber Co. v. State of South Dakota, 226 U.S. 157, 160–161, 33 S.Ct. 66, 57 L.Ed. 164 (1912); Coffey v. Harlan County, 204 U.S. 659, 662, 27 S.Ct. 305, 51 L.Ed. 666 (1907). See also Ughbanks v. Armstrong, 208 U.S. 481, 487, 28 S.Ct. 372, 52 L.Ed. 582 (1908); Leeper v. Texas, 139 U.S. 462, 467–468, 11 S.Ct. 577, 35 L.Ed. 225 (1891); Caldwell v. Texas, 137 U.S. 692, 697–698, 11 S.Ct. 224, 34 L.Ed. 816 (1891).

43. McGowan v. Maryland, 366 U.S. 420, 425, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). See also the cases cited *infra* notes 44 to 49.

44. Walters v. City of St. Louis, 347 U.S. 231, 237, 74 S.Ct. 505, 509, 98 L.Ed. 660 (1954).

45. Griffin v. County School Board, 377 U. S. 218, 230. 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964).

46. United States v. Petrillo, *supra* note 33, 332 U.S. at 8–9, 67 S.Ct. 1538; Whitney v. California, 274 U.S. 357, 370, 47 S.Ct. 641, 71 L.Ed. 1095 (1927).

47. Goesaert v. Cleary, 335 U.S. 464, 467, 69 S.Ct. 198, 200, 93 L.Ed. 163 (1948), quoting Roschen v. Ward, 279 U.S. 337, 339, 49 S.Ct. 336, 73 L.Ed. 722 (1929).

48. Two Guys from Harrison-Allentown, Inc. v. McGinley, 366 U.S. 582, 591–592, 81 S.Ct. 1135, 1140, 6 L.Ed.2d 551 (1961), quoting Williamson v. Lee Optical Co., 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

49. Loving v. State of Virginia, 388 U.S. 1, 9, 11–12, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); McLaughlin v. Florida, 379 U.S. 184, 191, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964); Skinner v. State of Oklahoma, 316 U.S. 535, 541–542, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942).

50. As we have stated, the documents to which defense counsel referred at the trial are not included in the record, not even the two marked for identification. See note 31, *supra*. In any event, counsel's proffer did not embrace elements essential to a successful claim of statu-

engaging with impunity in activities which he considered to be lotteries uncondemned by law.[51] This offer, though made good, would not have sufficed,[52] and Judge Corcoran was plainly right in refusing to admit into evidence proffered items too anemic to score the point legitimately.[53]

So we reach lastly the question whether appellant's exhibits possessed a capability to prove an unconstitutional distinction in the enforcement of the involved statutes against him. The Government takes the position, as we understand it, that the equal protection mandate affords no basis upon which one accused of crime may lay a claim of prosecutorial discrimination,[54] and indeed there are cases which seemingly so hold.[55] We would otherwise have thought that, at least since Yick Wo v. Hopkins,[56] prosecutors, like other governmental representatives, were constitutionally bound to refrain from administering the law "with an evil eye and an unequal hand." [57] This the Supreme Court seems clearly to have recognized,[58] and other courts

---

tory discrimination, and it is evident that the documents excluded from evidence could not have supplied those elements.

51. Appellant's position in this regard may be questioned, for the statutes under which he was prosecuted are broad. D. C.Code § 22–1501 (1967 ed.), on which the first count of the indictment was predicated, extends to "any lottery," and § 22–1502, on which the second count was laid, embraces the possession of any written material used or to be used in violation of § 22–1501. We intimate no opinion as to whether the activities reflected by the proffered documents were lotteries. We say only that if they were, they may have been within the interdiction of the same laws upon which this prosecution was based.

52. A different situation would have been presented if the documents defense counsel tendered had constituted only a part of a broader proffer which embraced all of the elements vital to a demonstration of statutory discrimination.

53. See also note 33, supra.

54. In its brief the Government asserted that "[a]ppellant is entitled to equal protection of the laws but not equal protection from the laws." (Emphasis in original.) This thesis it echoed on oral argument, at which we invited the parties to file supplemental memoranda addressed to the applicability of Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L. Ed.2d 446 (1962). In its memorandum, the Government stated that "this opinion is viewed as support for our position that the equal protection clause protects a person or class or persons from discriminating deprivation of an existing right, but it does not protect from selective law enforcement since there is no existing right to commit a crime."

55. See, e. g., Buxbom v. City of Riverside, 29 F.Supp. 3, 8–9 (S.D.Cal.1939); Strand Amusement Co. v. Commonwealth, 241 Ky. 48, 43 S.W.2d 321, 323 (1931); Society of Good Neighbors v. Van Antwerp, 324 Mich. 22, 36 N.W.2d 308 (1949).

56. Supra note 39.

57. 118 U.S. at 373–374, 6 S.Ct. at 1073.

58. Oyler v. Boles, supra note 54. This case involved attacks on increased penalties, imposed under a state habitual criminal statute, on the ground that the statute had not been enforced against others similarly situated. Construing petitioners' allegations to "set out no more than a failure to prosecute others because of a lack of knowledge of their prior offenses," the Court held that "[t]his does not deny equal protection due petitioners under the Fourteenth Amendment." 368 U.S. at 456, 82 S.Ct. at 506. The Court added:

"Moreover, the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation. Even though the statistics in this case might imply a policy of selective enforcement, it was not stated that the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification. Therefore grounds supporting a finding of a denial of equal protection were not alleged." Ibid.

See also Edelman v. People of State of California, 344 U.S. 357, 359, 73 S.Ct. 293, 97 L.Ed. 387 (1953); Ah Sin v. Wittman, 198 U.S. 500, 506, 25 S.Ct. 756, 49 L.Ed. 1142 (1905); Comment, The Right to Nondiscriminatory Enforcement of State Penal Laws, 61 Colum.L.Rev. 1103 (1961); Note, Discriminatory Law Enforcement and Equal Protection From the Law, 59 Yale L.J. 354 (1950).

have held,[59] but in this litigation it is unnecessary to debate the point. Appellant has not, in any event, undertaken enough of a showing to even raise the question, so we express no view as to how it should be resolved. It will be time enough to do so if and when, upon a record concretely and unavoidably presenting the issue for decision, the Government sees fit to resubmit the argument.

What we have said regarding appellant's charge that the lottery law is discriminatory on its face applies similarly to his complaint that it is unfairly enforced, and as to the latter we are led to the same conclusion. Whether or not the prosecutor's discretion in law enforcement is coextensive with the legislature's in law enactment, it is by its very nature exceedingly broad.[60] And a deprivation of equal protection must inevitably be "found in the actual existence of an invidious discrimination" and "not in the mere possibility that there will be like or similar cases which will be treated more leniently."[61] Here there was no claim of—much less a professed ability to substantiate—any intentional, purposeful differentiation.[62] It will not do simply to show, as appellant would, that

enforcement of the law is lax,[63] or even that other offenders may go free.[64]

Affirmed.

Circuit Judge TAMM concurs only in the result.

59. See *e. g.*, Moss v. Hornig, 314 F.2d 89, 92–93 (2d Cir. 1963); People v. Harris, *supra* note 33, 5 Cal.Rptr. at 855–856; People v. Utica Daw's Drug Co., *supra* note 33, 225 N.Y.S.2d at 135. See also Boynton v. Fox W. Coast Theatres Corp., 60 F.2d 851, 853–854 (10th Cir. 1932).

60. 'See Newman v. United States, 127 U.S. App.D.C. 263, 382 F.2d 479 (1967); Brack v. Wells, 184 Md. 86, 40 A.2d 319, 321, 156 A.L.R. 324 (1944).

61. Queenside Hills Realty Co. v. Saxl, 328 U.S. 80, 85, 66 S.Ct. 850, 852, 90 L.Ed. 1096 (1946).

62. See Oyler v. Boles, *supra* note 54, 368 U.S. at 456, 82 S.Ct. 501, 7 L.Ed.2d 446; Moss v. Hornig, *supra* note 59, 314 F.2d at 92–93; People v. Utica Daw's Drug Co., *supra* note 33, 225 N.Y.S.2d at 135. See also Snowden v. Hughes, 321 U.S. 1, 8, 10, 64 S.Ct. 397, 88 L.Ed. 497 (1944); Mackay . Tel. & Cable Co. v. City of Little Rock, 250 U.S. 94, 100, 39 S.Ct. 428, 63 L.Ed. 863 (1919). See also notes 33 and 50, *supra*.

63. Thompson v. Spear, 91 F.2d 430, 433–434 (5th Cir. 1937), cert. denied 302 U.S. 762, 58 S.Ct. 409, 82 L.Ed. 592 (1938); Sanders v. Waters, 199 F.2d 317, 318 (10th Cir. 1952); Wade v. City & County of San Francisco, 82 Cal.App.2d 337, 186 P.2d 181, 182–183 (1947); Society of Good Neighbors v. Van Antwerp, *supra* note 55, 36 N.W.2d at 310; People v. Utica Daw's Drug Co., *supra* note 33, 225 N.Y.S.2d at 131; State v. Hicks, 213 Or. 619, 325 P.2d 794, 802 (1958), cert. denied 359 U.S. 917, 79 S.Ct. 594, 3 L.Ed. 2d 579 (1959).

64. Oyler v. Boles, *supra* note 54, 368 U.S. at 456, 82 S.Ct. 501; Moss v. Hornig, *supra* note 59, 314 F.2d at 92–93; Sherman v. State, 234 Miss. 775, 108 So.2d 205, 207 (1959); People v. Friedman, 302 N.Y. 75, 96 N.E.2d 184, 186–187 (1950), appeal dismissed 341 U.S. 907, 71 S.Ct. 623, 95 L.Ed. 1345 (1951); State v. Corologos, 101 Vt. 300, 143 A. 284, 287–288, 59 A.L.R. 1541 (1928).